THOMAS W. MCANARNEY, Respondent, *v.* NEWARK FIRE INSURANCE COMPANY, Appellant, Impleaded with Another.

Insurance (fire) — contract — damages — market value of buildings destroyed not exclusive measure of loss — cost of reproduction less depreciation not sole measure of damage — every fact and circumstance that would logically tend to formation of correct estimate of loss should be considered — erroneous exclusion of declarations against interest as to value of buildings — erroneous charge that on question of value jury must consider only cost of reproduction, less depreciation — erroneous charge that obsolescence or inutility of structures might not be considered.

1. Under the standard policy of fire insurance limiting insurance to " actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage," the market value of buildings destroyed by fire is not the exclusive measure of the loss. The words " actual cash value " must be interpreted as having a broader significance than " market value " and to mean " actual value " expressed in terms of money.

2. Nor is cost of reproduction less physical depreciation the sole measure of damage. The words of the policy, "not exceeding the amount which it would cost to repair or replace the same with material of like kind and quality within a reasonable time after such loss or damage," afford no remedy to the assured. They merely express a privilege granted to the insurer. They do not restrict the field of investigation to such cost or provide that, with depreciation, it shall constitute an exclusive measure of recovery.

3. In an action, on such a policy, to recover the value of buildings destroyed by fire, the triers of fact may, and should, call to their aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. They may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to throw light upon the subject. In determining depreciation they should be permitted to consider that buildings destroyed were no longer useful for the purposes for which they were erected and their adaptability or inadaptability to other purposes.

4. In such an action, therefore, the trial judge committed reversible error in excluding declarations against interest as to the value of the buildings, made by the plaintiff; in charging the jury that upon the question of value they must consider no other subject than cost of reproduction less depreciation, and in further charging that the obsolescence of the structures or their inutility for commercial or manufacturing purposes might not be considered.     |

*McAnarney* v. *Newark Fire Ins. Co.*, 221 App. Div. 818, reversed.

(Argued December 12, 1927; decided January 10, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered September 16, 1927, affirming a judgment in favor of plaintiff entered upon a verdict.

*Robert P. Schur, Ross M. Lovell* and *Royal H. Weller* for appellant. The primary purpose of the fire insurance contract is indemnity. By the terms of the standard fire insurance policy, the insured is limited to the recovery of the actual cash value of the property insured or of the

cost of repair or replacement minus depreciation, whichever is the less. The plaintiff's contention that the provisions of the policy relating to cash value must be entirely ignored and that the only criterion is the cost of replacement, is untenable. (*Clinton* v. *Hope Ins. Co.*, 45 N. Y. 454; *Globe & Rutgers Fire Ins. Co.* v. *Prairie Oil Co.*, 248 Fed. Rep. 452; *Citizens Savings Bank & Trust Co.* v. *Fitchburg Mutual*, 86 Vt. 267; *Brown* v. *Ins. Co.*, 92 Vt. 372.) There was error in the trial court's ruling that the obsolescence of the buildings could not be considered in determining the depreciation. (*New York Life Insurance Co.* v. *Anderson*, 263 Fed. Rep. 527; *Nashville, C. & St. L. Ry. Co.* v. *United States*, 269 Fed. Rep. 351; *Van Baumbach* v. *Sargent Land Co.*, 242 U. S. 503; *San Francisco, P. S. S. Co.*, v. *Scott*, 253 Fed. Rep. 854.) There was error in the rulings of the trial court on the evidence and in the charge. (*Rheinfeld* v. *Dahlman*, 19 Misc. Rep. 162; *Perlman* v. *Shanck*, 192 App. Div. 179; *Ins. Co.* v. *Starr*, 71 Tex. 733.)

*James M. E. O'Grady, E. W. Personius* and *Leo Waxman* for respondent. Defendant's definition of " indemnity " and " actual cash value " are not in accordance with the terms of the policy. (*Laurent* v. *Chatham Fire Insurance Company of New York*, 1 N. Y. Super. Ct. 45; *Foley* v. *Manufacturers' Fire Insurance Co.*, 152 N. Y. 131; *Boskowitz* v. *Continental Ins. Co.*, 175 App. Div. 18; *Washington Mills Mfg. Co.* v. *Weymouth Ins. Co.*, 135 Mass. 503; *Ætna Ins. Co.* v. *Johnson*, 74 Ky. 587; *Stenzel* v. *Penn. Fire Ins. Co.*, 110 La. Ann. 1019; *Yost* v. *Anchor Fire Ins. Co.*, 6 J. & S. 594.) No error was committed in excluding evidence. (*Boskowitz* v. *Cont. Ins. Co.*, 175 App. Div. 18.) There was no error in the court's charge. (*Perlman* v. *Shanck*, 192 App. Div. 179; *Reehil* v. *Fraas*, 129 App. Div. 563.)

Kellogg, J. The plaintiff was the vendee of certain real estate, purchased in the year 1919 from the defendant

Lembeck & Betz Eagle Brewing Company, under written contract, for the sum of $8,000. Seven large buildings, designed for the manufacture of malt, stood upon the premises. Malt had been extensively manufactured therein prior to the year 1918. Owing to the passage of the National Prohibition Act, its manufacture was discontinued in March of that year and thereafter the buildings ceased to be employed for any useful purpose. In January, 1920, policies of insurance insuring the plaintiff and the Lembeck & Betz Eagle Brewing Company, as their interest might appear, against loss of the buildings by fire, in the aggregate sum of $42,750, were taken out. In April, 1920, the buildings were destroyed by fire. Subsequently the plaintiff served proofs of loss wherein he valued the buildings at approximately $60,000 and made claim for the total amount of the insurance. The defendant Newark Fire Insurance Company was one of the insuring companies. It had issued a policy insuring the plaintiff and the defendant Lembeck & Betz Eagle Brewing Company against fire loss in the amount of $2,500. The plaintiff demanded payment from it and, upon its refusal, brought this action to recover the sum of $2,500 promised by its policy. The Lembeck & Betz Eagle Brewing Company had refused to unite with the plaintiff in bringing suit. It was, therefore, made a party defendant. The action was tried before a jury, to which the trial judge submitted the written question: " What was the intrinsic or depreciated structural value of the buildings burned? " The jury returned a verdict specifying the value to have been $55,000. The trial court, having ascertained that the plaintiff had paid to the Lembeck & Betz Eagle Brewing Company the full purchase price for the property, directed judgment in favor of the plaintiff against the Newark Fire Insurance Company for the amount of its policy, with interest.

Complaint is made that the trial court in the course of the trial committed a variety of errors in ruling upon

the admissibility of proof offered by the defendant. It refused to receive proof that the plaintiff, when a director of the Lembeck & Betz Company, in the year 1919 reported to that company that he had been unable to obtain a purchaser for the property; that in the same year the corporation had directed the plaintiff to erect a sign upon the premises advertising the property for sale for the sum of $12,000. It refused to receive in evidence an affidavit made by the plaintiff in the year 1919 which was filed with the local board of assessors. In this affidavit the plaintiff had stated that the property had no value except for the production of malt; that the production of malt upon the premises had entirely ceased; that the owners would accept for the property the sum of $15,000; that the best offer which had been received was $6,000. To the rulings made, excluding such proof and proof of a similar nature, the defendant duly excepted. Complaint is also made of the court's charge to the jury and of its refusals to charge. The court said to the jury: " Your answer shall not be the market value — shall not be the sum that the buildings would sell for, but what it cost to build them — what it cost to build the structures, less depreciation proven in the case." It charged that the fact that the buildings, because of the passage of the National Prohibition Act, could no longer be used for the manufacture of malt, and the fact that the buildings could no longer be employed for any useful purpose, were wholly immaterial. It further charged that the value of the buildings destroyed was to be measured solely by the cost of replacement less deductions for physical deterioration. The defendant duly excepted to the charges made. It requested the court to charge several propositions of law which were the direct converse of the charges thus made, and, to its refusal, duly excepted.

The policy in suit contained the standard clause, applicable alike to fire losses whether of chattels or

1928.]                Opinion, per Kellogg, J.          [247 N. Y. 176]

buildings, reading as follows: " The Insurance Company does insure  *  *  *  and legal representatives to the extent of the actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage, but not exceeding the amount which it would cost to repair or replace the same with material of like kind and quality within a reas nable time after such loss or damage."

We cannot agree with the defendant that, under this clause, the market value of the buildings destroyed was the exclusive measure of the plaintiff's loss.   Insurance is thereby limited to " actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage."   Value ascertained by market price is necessarily expressive of a suitable deduction for depreciation.   If " actual cash value " were synonymous with " market value," the words in parenthesis, to have force, would require depreciation to be twice subtracted.   No such anomolous result could have been intended.   In order that the parenthetical words should have force, therefore, " actual cash value " must be interpreted as having a broader significance than " market value."   Moreover, if market value were the rule, property, for which there was no market, would possess no insurable value, a proposition which is clearly untenable.   We think it manifest that the claus  was not intended to restrict a recovery for this insurance loss to the market value of the insured buildings.   We interpret " actual cash value " to have no other significance than " actual value " expressed in terms of money.   For methods by which actual value may be ascertained, we must look beyond the terms of the policy to general principles of the law of damages.

No principle, obtaining in the law of damages, requires that the recovery be restricted to the market value of the buildings.   True it is that articles of commerce destined for sale must be appraised, to measure loss through

conversion or breach of contract, by the market prices at which such articles are bought and sold. The reason for the rule is this: the loser of the article, if awarded the prevailing price therefor, may enter the market and, with the sum awarded, replace the article lost with a substitute identical in kind and quality. Replacement in kind necessarily accomplishes complete indemnity. However, the rule presupposes the existence of a broad market with frequent trading in articles of an identical character with the article lost. (*Starkey* v. *Kelly*, 50 N. Y. 676; *Dana* v. *Fiedler*, 12 N. Y. 40; *Messmore* v. *N. Y. Shot & Lead Co.*, 40 N. Y. 422; *Wehle* v. *Haviland*, 69 N. Y. 448; *Todd* v. *Gamble*, 148 N. Y. 382; *Saxe* v. *Penokee Lumber Co.*, 159 N. Y. 371.) It must be a market in which the loser " could have replaced the goods." (*Wehle* v. *Haviland, supra.*) It must show " what would be the value to a party if he wanted to get the same articles again." (*Starkey* v. *Kelly, supra.*) It must enable the loser to " supply himself with this article by going into the market and making his purchase at such price." (*Messmore* v. *N. Y. Shot & Lead Co., supra.*) It has been said that value does not inhere in the thing to be valued; that it is a subjective conception; that identity of belief, on the part of many traders, as indicated in a market, causes the conception to assume the objective quality of an established fact. (Sedgwick on Damages, sec. 242.) " Market value," as an exclusive measure of damages, necessarily involves identity of concept as disclosed by frequency of sale. " Proof of a single sale is not enough to establish a market value." (Sedgwick, sec. 244.) Clearly, where no sales have been made, the opinion of an expert that the property in question " will sell " for a given sum does not establish " market value," in the sense of an exclusive criterion of value. " There cannot be an established market value for barges, boats, and other articles of that description, as in cases of grain, cotton, or stock. The value of such a boat depends upon

the accidents of its form, age, and materials; and as
these differ in each individual there could be no estab-
lished market value." (*The Granite State*, 3 Wall. 310,
at p. 314.)    A luxurious private yacht of large dimensions,
though marketable in the sense that she can be sold, in
the true sense of the term has no market value.    " She
does not fall within the class of articles which are sold
from day to day, so that frequent current market trans-
actions will enable the owner, if he desires to sell; to obtain,
within a reasonable time, a fair value, or, if he is compelled
to replace, to replace at a like fair value." (*The H. F.
Dimock*, 77 Fed. Rep. 226.)    The proposition that " if
there be no market, in a restricted sense, yet if the com-
modity is the subject of sale and there is a selling price,
the same rule obtains and proof of cost should be
excluded," has not found approval in this court. (*Todd
v. Gamble, supra.*)    Self-evidently, the buildings which
are the subject of this action had no " market value "
in a strict sense.    In the first place, buildings, independ-
ently of the land upon which they stand, are never the
subject of market sales.    In the second place, no two
buildings are alike in size, proportion, ornamentation, or
otherwise.    Doubtless no buildings, duplicating those
destroyed, could be found the world over.    They are
incapable of replacement from any market whatsoever.
Therefore, the strict rule that market value or market
price is an exclusive measure of damage does not apply.

We do not agree with the plaintiff that, under the
standard clause, the sole measure of damage was cost of
reproduction less physical depreciation.    The words " not
exceeding the amount which it would cost to repair or
replace the same with material of like kind and quality
within a reasonable time after such loss or damage,"
afford no remedy to the assured.    They merely express
a privilege granted to the insurer.    The insurer might,
if it so elected, reconstruct the destroyed buildings upon
their ancient pattern with materials of like kind and

quality, or pay the assured the necessary cost of such reconstruction. If the insurer so elected, it could be allowed nothing for the difference between the value of the old and the new buildings. (Wood on Fire Insurance, sec. 472.) The clause makes no allusion to depreciation, except as it provides for the recovery of "actual cash value" to be "ascertained with proper deductions for depreciation." This provision, while it doubtless comprehends cost of reproduction, does not restrict the field of investigation to such cost or provide that, with depreciation, it shall constitute an exclusive measure of recovery.

Indemnity is the basis and foundation of all insurance law. (*Castellain* v. *Preston*, 11 Q. B. D. 380; Richards on Insurance Law, p. 27; Wood on Fire Insurance, sec. 471.) "The contract of the insurer is not that, if the property is burned, he will pay its market value, but that he will indemnify the assured, that is, save him harmless or put him in as good a condition, so far as practicable, as he would have been in if no fire had occurred." (*Washington Mills Mfg. Co.* v. *Weymouth Ins. Co.*, 135 Mass. 503.) The insurer, in our case, in its contract with the plaintiff stipulated that it "does insure" the plaintiff "to the extent of the actual cash value." Under our interpretation of the phrase, the insurer "does insure" to the limit of actual value. To insure is "to guarantee or secure indemnity for future loss or damage." (The Century Dictionary.) Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. It may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to throw light upon the subject.

(Sedgwick on Damages, sec. 722; Wood on Fire Insurance, sec. 472; *State Insurance Co.   . Taylor,* 14 Colo. 499; *Citizens' Bank* v. *Fitchburg Fire Ins. Co.,* 86 Vt. 267; *The H. F. Dimock, supra; Washington Mills Mfg. Co.* v. *Weymouth Ins. Co., supra; Shattuck* v. *Stoneham Branch R. R. Co.,* 6 Allen, 115; *Swan* v. *Middlesex Co.,* 101 Mass. 173; Wigmore on Evidence, sec. 1943.)

In the case at bar the trier of fact, in considering cost of reproduction, was required by the policy to make proper " deductions for depreciation." " The word (depreciation) means, by derivation and common usage, ' a fall in value; reduction of worth.' " (*N. Y. Life Ins. Co.* v. *Anderson,* 263 Fed. Rep. 527, at 529.) It includes obsolescence. (*Nashville, C. & St. L. Ry. Co.* v. *U. S.,* 269 Fed. Rep. 351, at 355; *San Francisco & P. S. S. Co.* v. *Scott,* 253 Fed. Rep. 854, at 855.) An obsolete thing is a thing no longer in use. In determining the extent to which these buildings had suffered from depreciation the trier of fact should have been permitted to consider that, owing to the passage of the National Prohibition Act, they were no longer useful for the purposes to serve which they were erected. It should have been permitted to consider their adaptability or inadaptability to other commercial purposes. The law of damages distinguishes between marketable chattels possessed for purposes of sale and chattels possessed for the comfort and well-being of their owner. In the instance of the former it judges their value by the market price. In the instance of the latter it measures their loss, not by their value in a second-hand market, but by the value of their use to the owner who suffers from their deprivation. The latter measure is employed in the case of household furniture, family records, wearing apparel, personal effects and family portraits. (*Barker* v. *Lewis Storage & Transfer Co.,* 78 Conn. 198; *Green* v. *Boston & Lowell R. R. Co.,* 128 Mass. 221; *Lake* v. *Dye,* 232 N. Y. 209, at p. 214.) Doubtless the law should similarly discriminate between buildings used and usable for

commercial purposes and buildings used and usable for residence purposes. " The considerations affecting the value of a family residence and of an apartment house or office building are not entirely the same." (*Citizens' Bank* v. *Fitchburg Fire Ins. Co., supra.*) It might well he held that handsomely carved woodwork or other ornamental features, when found in a private home, have insurable value; whereas, when found in a factory, since they are not useful for factory purposes, they have no such value. However that may be, it is a self-evident proposition that factory buildings peculiarly adapted to the manufacture of malt must have depreciated in value when malt may no longer be manufactured; that buildings useful only for factory purposes have lost value when they are no longer used or usable for such purposes.

The foregoing discussion necessarily establishes that the trial judge committed reversible error in excluding the declarations against interest as to the value of the buildings, made by the plaintiff; in charging the jury that upon the question of value they must consider no other subject than cost of reproduction less depreciation, and in further charging that the obsolescence of the structures or their inutility for commercial or manufacturing purposes might not be considered. Accordingly, the judgment must be reversed.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and O'BRIEN, JJ., concur.

Judgment reversed, etc.