**HOME INS. CO. OF NEW YORK v. TYDAL CO. et al.**

No. 11371.

Circuit Court of Appeals, Fifth Circuit.
Dec. 19, 1945.

Rehearing Denied Jan. 23, 1946.

Austin Y. Bryan, Jr., of Houston, Tex., for appellant.

O. R. Tipps, of Wichita Falls, Tex., for appellees.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal is from a judgment on a jury verdict for $15,000 rendered in a suit upon a fire insurance policy. Liability was conceded and only the amount recoverable was in dispute. The plaintiff below, appellee here, was claiming $19,226.67, which was the amount it contended was actually expended in restoring the burned portion of the insured plant, or $20,000 which it contended was the difference between the value of the plant before the fire ($30,000)

and the value of what was left afterwards ($10,000).

The policy was for $26,800 on the plant. It bore riders which contained provisions which were specially pleaded by the insurer. One provision excluded from the insurance the foundations of buildings, machinery and equipment below the basement floor, and underground piping and reservoirs. Another, called the coinsurance clause, required the assured to maintain contributing insurance on each item of property insured of not less than 90 per cent of the actual cash value thereof, or on failure to do so to become an insurer to the extent of the deficit. A third, called the distribution average clause, made the insurance to attach on "each separate building, compartment, structure, platform, yard, car or item" in such proportion as the value of each bore to the aggregate value of the subject insured. The insurer contended that at the date of the fire, Dec. 30, 1943, by reason of war conditions, the value of the plant had risen to over $96,000, and there being no other insurance taken the plaintiff was coinsurer for over two-thirds of the loss; and that when the values were properly distributed over the several separate items destroyed and not destroyed, its own liability would not exceed $3,500.

The judge submitted the case to the jury for a general verdict on all these issues. They found $15,000 for the plaintiff. The errors specified criticise the verdict as excessive, and as not having applied the clauses of the policy; they complain of the action of the judge in submitting the case for a general verdict, instead of under particular questions under Rule of Civil Procedure 49, 28 U.S.C.A. following section 723c; exception is taken to charges given and refused; and to rulings on evidence touching market value.

■ As to the last, appellant objected to opinion evidence as to "cash market value" of the plant just before the fire, insisting that the cost of reproduction with deduction for depreciation was the only proper evidence of the "actual cash value" mentioned in the policy in the coinsurance clause and especially in the loss limitation clause. The latter reads in part: "This Company shall not be liable beyond the actual cash value of the property at the time of the loss, with proper deductions for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind or quality." We do not think either market value or reproduction cost less depreciation could be said to be the sole measure of actual value of property like this. The plant was a gasolene refinery bought second-hand in 1941 for about $19,000. There is testimony that about $5,000 was spent on bettering it. Witnesses for plaintiff who knew the plant and its condition and said they had knowledge of what some similar plants had sold for were allowed to testify to their opinion of what its fair market value, or fair value, was at the time of the fire, ranging from $22,000 to $30,000. Evidence was also admitted as to what it cost to repair or replace what was burned. The insurer was allowed to show by its witnesses what it would cost part by part to build such a plant and their opinion of the proper depreciation allowance, reaching a value above $90,000. There was of course no regular market for such plants. The witnesses did not say there was, but only that they knew of some sales. They were really testifying to their opinion of the cash value. The court at one time expressed the view that there must be a market, but receded from it. We think testimony on all these lines was relevant and admissible to aid the jury in reaching a conclusion as to what was the "actual cash value," under the coinsurance clause of the whole plant before the fire, and in applying the loss limitations above quoted as respects the property burned. We find nothing to the contrary in Traveler's Indemnity Co. v. Plymouth Box & Panel Co., 4 Cir., 99 F.2d 218; McAnarney v. Newark Fire Ins. Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149; and Chicago & E. R. Co. v. Ohio City Lumber Co., 6 Cir., 214 F. 751; or Sedgwick on Damages, Sec. 242, p. 1153, 1154; all cited by appellant.

■ The objections made to the court's charge before the jury retired as respects the submission of mixed matters of law and fact are too vague to raise any question for our decision. The objections as to the failure to charge are tenable only as to the specific written requests denied. A specific objection was made to the court's charge respecting the coinsurance clause: "The larger the value of the property, you see therefore gentlemen, the smaller is the recovery of the insured under this first clause that I read." This effect was adverted to again later in the charge in stating the contentions of the parties. The objection was that it tended to prejudice the-

jury to say that the insurer was trying to keep the value up to diminish the recovery. That was exactly what the insurer was contending for and that would be the effect of the coinsurance clause in the case. There was no error in telling the jury so. There were three long written requests to charge, which each contained some pertinent and proper instructions. The equivalent was given in the charge in most instances. As a whole the first request was argumentative and introduced details of evidence which the court was not bound to follow, and the last part of it told the jury to consider the productive net income from the plant in determining its value. Net income depends so much on management and varying markets for the products and accidental circumstances that we do not think it ought to have been mentioned as a criterion of property value. The second request related to the use of a special form of verdict regarding the application of the distribution average clause. We do not know what that form was, but as the court did not use it, the request could not have been given. The third request also had reference to a special form of verdict on the application of the exclusions from coverage clause, and also was not pertinent because that form was not used.

 Exception is taken to the refusal of the court to submit the issues on special questions, which probably were in mind in preparing the above mentioned requests to charge. Each side had its ideas about what the questions should be, but neither objected to a special verdict under Rule of Civil Procedure 49. The judge however refused to submit the issues on questions, and charged the jury on all the issues, leaving the jury to make a general verdict. A jury trial normally contemplates a general verdict. This case might well, especially as no one objected, have been dealt with under Rule 49. But the rule is permissive, not mandatory. There was no error.

The verdict is criticised as being a mere guess, because in round numbers; as being excessive; and in disregard of the three clauses of the policy pleaded by the insurer. In the federal system appellate courts do not normally review the verdict of the jury, but only the acts of the judge. The trial judge alone has the right and duty to set the verdict aside if dissatisfied with it. The most an appellate court can do, if it thinks the verdict not according to the weight of the evidence, is to scan the trial more closely for error. We are not impressed that this verdict is wrong. All the defenses of the insurer were laid before the jury, though not with the detail it desired. It is not clear that any was ignored by them. There was abundant evidence, if the jury believed it, that the actual cash value of the plant was $30,000. Ninety per cent of that would be $27,000. The insurance was $26,800. The coinsurance clause was therefore practically satisfied. According to some of the opinion evidence the total loss was $20,000, and the cost of repairs and replacement was $19,226; but some of that was betterment, both in new material and better construction. The jury cut the loss to $15,000. The effect given the distribution average clause by the jury does not appear. It is not necessarily true that prorating the insurance according to actual value to each separate building or item would have made the recovery less. Whether the "heart of the plant" which was destroyed be viewed as one item or composed of several items might make no difference in the result. We do not think it at all appears that the jury has not made a just verdict according to the insurance contract, the evidence and the law. No reversible error appearing in the trial, the judgment is

Affirmed.