Octavia **FEATHERSTON**, Assignee of Helen Westfall, Helen Westfall, and Alfred Featherston, Plaintiffs,

v.

**HARTFORD FIRE INSURANCE COMPANY**, Defendant.

**Civ. A. No. 665.**

United States District Court
W. D. Arkansas, Hot Springs Division.
Nov. 28, 1956.

536

Alfred Featherston, Murfreesboro, Ark., for plaintiffs.

Wootton, Land & Matthews, Hot Springs, Ark., for defendant.

JOHN E. MILLER, District Judge.

### Statement

This case was tried to the Court, without a jury, on October 24, 1956, and at the conclusion of the trial the Court took the case under advisement pending receipt of briefs of the parties in support of their respective contentions.

The briefs having been received, the case is now ready for final disposition by the Court. And the Court, after considering the pleadings, evidence, and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

1.

The plaintiffs are each citizens of the State of Arkansas, and each of them reside in the Western District thereof. The defendant is a Connecticut cor-

poration. The amount involved, exclusive of interest and costs, exceeds the sum of $3,000.

2.

The plaintiff, Helen Westfall (she has since remarried and her name is now Helen Westfall Golden; but in this opinion the Court will refer to her as Mrs. Helen Westfall), is the insured in the instant case. Her first husband, Mr. Westfall, died in January 1953. At that time she took some of her furniture to the home of her son, Joe Westfall, in El Dorado, and some to the home of her brother, Buck Green, in Patmos, Arkansas. She then moved to Hope and lived with her mother until March of 1954, when that home burned. Shortly after the fire in Hope, Mrs. Helen Westfall moved into the home of her son and daughter-in-law, Joe and Benfadene Westfall, in El Dorado, Arkansas.

Joe and Benfadene Westfall had some domestic difficulties, and on June 11, 1954, Benfadene left the home, taking with her some of the furniture. She intended to return and to take some more of the furniture, but before she could accomplish this Joe Westfall had all the remaining furniture removed to the home of Mrs. Helen Westfall's brother, Buck Green, in Patmos, Arkansas. Part of the furniture and other personal property removed by Joe to Patmos was owned by the plaintiff, Helen Westfall. Some of the property had been purchased by Joe Westfall during his marriage to Benfadene Westfall, and a few of the items were the separate property of Benfadene Westfall.

3.

At the time the property was removed from El Dorado to Patmos, Joe Westfall gave his mother, Helen Westfall, all of the property he owned since he did not intend to keep house in the future.

4.

When Helen Westfall moved into her brother's home in Patmos part of her property was put in the house and part of it was put in the barn. An insurance agent or salesman came to the home and looked over the property in the house and in the barn. Thereafter, on June 15, 1954, the policies involved herein were issued to Mrs. Helen Westfall, policy No. 36009655 insuring the items in the house in the sum of $5,000 and policy No. 36009656 insuring the items in the barn in the sum of $2,000. While these policies were in full force and effect a fire occurred on August 3, 1954, completely destroying all the personal property in the house and in the barn.

Thereafter on September 30, 1954, Mrs. Helen Westfall executed proofs of loss on the two policies in question, claiming that her total loss was $9,599.-31. The defendant contended and now contends that Helen Westfall did not own all of the property in question, and that the value of the property was less than the amount claimed by Mrs. Helen Westfall. For that reason the defendant refused to pay the total amount of $7,-000, which was the maximum liability under the two policies, and the present suit has resulted.

5.

Each of the policies insures the plaintiff, Helen Westfall, "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and cost within a reasonable time after such loss, * * * nor in any event for more than the interest of the insured, against all direct loss by fire * * * to the property described hereinafter while located or contained as described in this policy".

The property was described as household and personal property, part of which was located in the house and part of which was located in the barn, each of said buildings being described in the policies.

6.

Of the property moved from the home of Joe Westfall to Patmos, the only items owned solely and separately by Benfa-

dene Westfall were a piano and bench, and a Westinghouse roaster and stand.

7.

The actual cash value of the property owned by Mrs. Helen Westfall located in the house and which was destroyed by fire was $4,000.

The actual cash value of the property owned solely by Mrs. Helen Westfall located in the barn and which was destroyed by the fire was in excess of $2,000.

8.

On January 31, 1955, the Union County Chancery Court granted Benfadene Westfall a divorce from Joe Westfall, and on May 27, 1955, the court entered a decree in favor of Benfadene Westfall and against Joe Westfall and his mother, Helen Westfall, determining the property rights of Benfadene Westfall. Among other things, the court held that Benfadene Westfall was entitled to recover the value of her one-third interest in the household goods which had been removed from El Dorado to Patmos after allowing a credit for two-thirds of the household goods taken by Benfadene Westfall at the time of the separation. The court found the amount due Benfadene Westfall for these items to be $480. The court also found that a spinet piano and bench and a Westinghouse roaster and stand of the value of $750 belonged to Benfadene Westfall individually. The court granted Benfadene Westfall a judgment in the total sum of $3,730 against Joe Westfall and Helen Westfall. This judgment was satisfied on February 16, 1956.

9.

On February 8, 1956, Helen Westfall assigned to the plaintiff, Alfred Featherston, an undivided one-fourth of her claim against the defendant arising out of the fire in question. By the same assignment she assigned to the plaintiff, Octavia Featherston, an undivided three-fourths of said claim.

### Discussion

The primary questions before the Court are (1) whether the insured, Helen Westfall, owned the property in question, and (2) what is the proper method of ascertaining the actual cash value of the property destroyed by the fire.

With regard to ownership of the property, defendant contends that Helen Westfall did not own the property which was transferred from her son's home in El Dorado, and that in any event the property would be subject to a one-third dower interest of Benfadene Westfall. Plaintiffs, on the other hand, contend that Joe Westfall made a valid gift of the property to his mother, Helen Westfall, and that Benfadene Westfall had no legal interest in the property at the time of the fire.

■ The Court is convinced that Helen Westfall was the sole owner of the property in question (except those items which were separately owned by Benfadene Westfall) at all times material herein. The policies were issued on June 15, 1954, and the fire occurred on August 3, 1954. At that time Joe and Benfadene Westfall were separated, but the divorce was not obtained until January 31, 1955, and the decree determining Benfadene's property interests was not entered until May 27, 1955. Thus, at the time of the issuance of the policies and at the time of the fire Benfadene's only interest in the personal property was an inchoate interest, depending on her success in the divorce action. (If she had lost the divorce action, she would have received none of the personal property.) And in the event she should be successful in obtaining a divorce, under Sec. 34–1214, Ark.Stats., she would be entitled to one-third of her husband's personal property.

■ It is true that Benfadene Westfall was successful in her divorce action and that the Chancery Court gave her a judgment for the value of a one-third interest in the personal property which had been moved from El Dorado to Patmos. But, the material times involved were June 15, 1954, when the policies were issued and August 3, 1954, when

the fire occurred. On those dates the only interest Benfadene Westfall had in the personal property was a possible right to one-third of the same in the event she was granted a divorce. In this connection, under the Arkansas law, a husband remains the sole and unconditional owner of personal property until the property is actually awarded to the wife by a decree of the court. Hix v. Sun Ins. Co., 94 Ark. 485, 127 S.W. 737.

In the Hix case the court held that the husband was the sole and unconditional owner of the property within the meaning of the policies, even though a divorce decree had been rendered against the husband and possession of the home and personal property given to the wife. Certainly in the instant case, where the divorce was not granted until long after the material times in question, Joe Westfall was the sole and unconditional owner of the personal property at the time he transferred it to his mother, Helen Westfall.

■■ A wife has no inchoate right of dower in the personal property of her husband and he may dispose of such personal property at his pleasure. McClure v. Owens, 32 Ark. 443. Therefore, there was nothing to prevent Joe Westfall from giving the personal property to his mother, Helen Westfall, and the evidence convinces the Court that he did make a valid gift of the property to her. Of course, however, he could not give to his mother property which was owned separately by his wife, Benfadene Westfall. The decree of the Union County Chancery Court (defendant's Exhibit No. 1) establishes that the piano and bench, and the Westinghouse roaster and stand were owned by Benfadene Westfall individually. It follows that these items could not be given by Joe Westfall to his mother and that she had no interest in these items within the meaning of the policies.

In other words, the Court has concluded that Joe Westfall had the power to and did give to his mother all the personal property except that owned separately by Benfadene Westfall, and that Helen Westfall's interest in the property, within the meaning of the policies in question, was sole and unconditional at the time of the execution of the policies and at the time of the fire.

■■ With regard to the measure of recovery, the meaning of the term "actual cash value" as used in the policies depends upon the type of property involved. Good Canning Co. v. London Guarantee & Acc. Co., D.C.W.D.Ark., 128 F.Supp. 778, 790. Apparently the Arkansas Supreme Court has not passed upon the precise point, but this Court is of the opinion that the following is the proper rule:

"The law of damages distinguishes between marketable chattels possessed for purposes of sale and chattels possessed for the comfort and well-being of their owner. In the instance of the former it judges their value by the market price. In the instance of the latter it measures their loss, not by their value in a secondhand market, but by the value of their use to the owner who suffers from their deprivation. The latter measure is employed in the case of household furniture, family records, wearing apparel, personal effects, and family portraits. Barker v. Lewis Storage & Transfer Co., 78 Conn. 198, 61 A. 363, 3 Ann.Cas. 889; Green v. Boston & L. R. Co., 128 Mass. 221, 35 Am.Rep. 370; Lake v. Dye, 232 N.Y. 209, at page 214, 133 N.E. 448." McAnarney v. Newark Fire Ins. Co., 247 N.Y. 176, 159 N.E. 902, 905, 56 A.L.R. 1149, 1154.

See, also, Annotation, 56 A.L.R. 1155 et seq.; 45 C.J.S., Insurance, § 915, page 1012.

In the instant case defendant called as a witness J. R. Seastrunk, an auctioneer and used furniture store operator, who stated his opinion as to the value of the property destroyed by the fire. Of course, he had not seen the goods and his opinion was based on his knowledge of prices of similar merchandise. Plaintiffs relied upon the testimony of Ross Wilhite, a furniture store operator; Joe Westfall, who had worked part time in

a hardware store; and the plaintiff, Helen Westfall.

Defendant's witness, Mr. Seastrunk, estimated the total value of the property which had been in the barn to be slightly in excess of $1,700, and the value of the property which had been in the house to be approximately $2,900. (These figures did not include some items which he did not place a value on because of insufficient information.) It was clear from his testimony that his valuations were based on what the items would bring if sold at an auction or in a used furniture store.

On the other hand, plaintiffs' witnesses placed a total value of approximately $3,000 on the property which was in the barn and a total value of approximately $6,500 on the property which was in the house. Some of the amounts claimed by plaintiffs were based upon sentimental value, and on many of the items, particularly large appliances, plaintiffs deducted nothing for depreciation.

A consideration of the evidence as a whole convinces the Court that the actual cash value of the property owned by Mrs. Helen Westfall and located in the barn was in excess of $2,000, and that the actual cash value of her property which was located in the house was $4,000.

Since plaintiffs have recovered the full amount of the policy covering the property in the barn they are entitled to a penalty of 12 percent, and a reasonable attorney's fee under the provisions of Section 66–514, Ark.Stats. 1947 Anno. (1955 Supp.) The Court is of the opinion that a reasonable attorney's fee in connection with the suit on this policy is $500.

As to the policy covering the property in the house, since plaintiffs did not recover the full amount of the policy, they are not entitled to a penalty or an attorney's fee. See Good Canning Co. v. London Guarantee & Acc. Co., supra, at page 792 of 128 F.Supp., and cases cited therein. (In the Good Canning Co. case, the court discussed the possible significance of the sentence "This liability attaches when liability is denied by the insurer and suit is filed", which sentence was added to the statute in 1953; the sentence was deleted by the Legislature in 1955, and thus the law remains unchanged and the insured must still recover the full amount to be entitled to a penalty or an attorney's fee.)

Conclusions of Law

1.

The Court has jurisdiction of the parties to and the subject matter of this action.

2.

On the policy No. 36009655 covering the property in the house, plaintiffs are entitled to recover the sum of $4,000 of and from the defendant.

On the policy No. 36009656 covering the property in the barn, plaintiffs are entitled to recover of and from the defendant the sum of $2,000, plus $240 penalty, making a total of $2,240 on this policy. The attorney's fee of $500 allowed on this policy should be taxed as costs in the case.

Therefore, judgment in favor of plaintiffs and against the defendant should be in the sum of $6,240, together with all costs paid out and expended including the sum of $500 attorney's fee.

A judgment in accordance with the above should be entered.