Ronald E. Coleman, J.
This claim was made fox the appxopxiation by the State in 1965 of a portion of claimants’ property located on the northerly side of Route 17C and also a portion of property owned by them to the rear of land owned by others on the other or southerly side of Route 170 in the Town of Owego, both properties being vacant land.
On the trial, the State called attention to Celeste v. State of New York (15 A D 2d 593), which involved a prior appropriation in 1957 from this same property; the present claim involved the property remaining after that appropriation and was brought by the same claimants. As a result of the prior appropriation claimants were left with 11± acres from which in 1965 the State made a further appropriation, the subject of the claim herein. The State took the position that inasmuch as claimants’ remaining property after the first appropriation on the northerly side of Route 17C was the same 11 ± acres involved in this claim, found by the court to be worth $7,500 in 1957, and no changes had been made in the property between the first and the present appropriation, that in making our award herein we should determine the before value of the property by adjusting the amount of $7,500 taking into consideration the percentage of rise in real estate values as testified to herein for the intervening years. All this was to be done on some theory of res judicata, collateral or mutual estoppel or some such other theory. We were urged to do so on the basis of the fact that the same parties *993 are involved as well as the very same property. While the doctrine of res judicata and estoppel has been reconsidered recently, there still must be identity of issues and these issues must necessarily be involved and determined by the first judgment. (See B. R. DeWitt, Inc. v. Hall, 19 N Y 2d 141; 9 CarmodyWait 2d, New York Practice, § 63:205, p. 211.) There are a number of common elements involved between the first trial and the present' one. However, the issue here to be determined on this trial is the market value of claimants’ property in 1965 not what the value was in 1957. Market value to be found is as of the vesting date and the price a hypothetical buyer would pay must be related to the condition and situation of the property at the time it was taken, here in 1965 not 1957. (Matter of City of New York [West 10th St.], 267 N. Y. 212.)
The decision of the Appellate Division on the 1957 appropriation necessarily was based on the record before that court. In it the court said “ The wide variance between the experts was largely in their opinion as to value after appropriation, the State’s expert merely giving his bald opinion that this parcel [11± acres] was still worth $36,550 after the appropriation without fill.” (Celeste, supra, p. 594; emphasis added.) From this it would appear that the decision rested in large part if not entirely on failure of proof by the State. To now make claim that this decision, based on the State’s own failure to make proper proof, is res judicata as to any or all of the issues in the present claim defies reason.
While evidently ignoring the fact that the State’s appraiser on the trial of the 1957 claim placed an after value on the 11 ± acres of $36,550, the State now asserts that the value placed on it by the claimants’ appraiser was an admission against interest by the claimants. Contrary to the impression given to us on the trial, claimants’ expert on the former trial did not place the value of $7,500 on their remaining 11± acres, but rather the trial court found this as the after value and their expert testified that the cost of fill required as a result of the State’s appropriation would exceed the value of the property. His opinion was by no means an admission against interest but at the best might be said to be an admission that may have some degree of importance to the issue here to be decided. If the opinion of claimants’ expert can be said to be an admission, there would appear to be no reason why it could not be said that the opinion of the State’s expert was also an admission by the State. The testimony as to value on the trial of the first appropriation was given by the claimants’ expert witness. Hnder some circumstances a party may be bound by his agent and it might be said *994 here that the expert was an agent of the claimants. The expert on that trial was not the same one who testified on this trial and he did no more than give his opinion as to the after value of the property in 1957 based on his analysis of the sales relied upon by him. If this testimony can be said to be an admission on the part of the claimants in respect to the after value of their property in 1957, it could be no more than an admission as to what their expert’s opinion was and an opinion is not necessarily controlling as to the fact. Assuming that as such it was an admission by the claimants, it would be a judicial admission which might come under the conclusive admission rule. However, when the claimed admission is based on the opinion of an expert as is the case here, the courts are not likely to invoke the conclusive admission rule. (9 Wigmore, Evidence [3d ed.], § 2597, p. 586 et seq. see, especially, § 2594a, p. 597; Smittjer Grain Co. v. Koch, 71 N. W. 2d 29 [Iowa].)
Admissions as to value, to be of any aid to the court, must be made at or about the time of the appropriation. It is left to the court to decide whether the time is too remote. This appears to be the rule even when such value is based on opinion and is contra to the general rule of admissions which applies to facts. (5 Nichols, Eminent Domain, §§ 18.6 and 18.7, pp. 311-317; Richardson, Evidence [8th ed.], § 304, p. 282; see, also, Matter of City of New York [Lincoln Sq. Slum Clearance Project], 15 A D 2d 153, 163-164, affd. 12 N Y 2d 1086.)
We find that the trial of the 1957 appropriation was too remote in time as to the appropriation in 1965 to provide a standard common to that trial and the one herein. It would appear that under the circumstances here, the opinion of claimants’ real estate expert given on the other trial is admissible on this trial where value is the issue. (See McAnarney v. Newark Fire Ins. Co., 247 N. Y. 176.) However, it is not of controlling importance here in view of this record which contains new appraisals based upon entirely different sales recently made prior to the date of the appropriation herein in which both the appraiser for the claimants and the State expressed opinions as to a before value for the 11± acres which are considerably higher than $7,500 or the testimony of claimants’ appraiser on the trial of the 1957 appropriation.
All of these theories were urged upon us here in spite of the fact that no employee of the State took the trouble to call to the attention of its appraiser before he made his appraisal the fact that in a prior decision these 11± acres had been valued at $7,500 in 1957. On this trial, the appraiser testified that he placed a value of $3,000 an acre on the property based on his *995 analysis of recent comparable sales, all detailed in his appraisal. It further appeared that he only was informed of the prior valuation on or shortly before the trial of this claim. He was neither asked nor did he in any way indicate that, knowing this, he would in any manner change his opinion of value as given in his appraisal.
Under ordinary circumstances the assertions made by the State would merit little discussion but here counsel was adamant in his position in spite of what the Appellate Division indicated was the basis for its decision on the prior appropriation and the testimony of the State’s own appraiser on this trial. Further, in the Appellate Division on that appeal, the State argued that it was prejudicial error for the trial court to have considered “ * the awards made by the Court for other properties in the vicinity ’ ” (p. 593). Here in addition to the fact that we have the same claimants and property, the State urged upon us that the court only found that such consideration was harmless error, seemingly now suggesting that a little harmless error has some value. Error whether harmless or otherwise is still error to be avoided as far as possible. It goes beyond the realm of being harmless and becomes reversible error when the record otherwise does not support a decision. A decision here, based on any such use of the record and decision in the 1957 appropriation as suggested by the State, would not be sustained by the record herein.
There still remains one other of the many theories urged on us by the State which needs to be discussed. Claimants owned additional land located on the southerly side of Route 17C and opposite their northerly 11± acres. This property, consisting of 2± acres, had no road frontage and was located to the rear of a property 200± feet in depth owned by others along which there was a 10-foot right of way to Route 17C over which claimants had access to the highway. At the same time in 1965 when the State made an appropriation from their property northerly of Route 17C, it also appropriated a portion of their southerly property. It was appropriated to be used for the construction of an access road which then would give to the claimants’ remaining property road frontage. Claimants in the claim herein also sought the damages sustained by them as a result of this appropriation.
In his appraisal the State’s appraiser, while finding no consequential damages to claimants’ remaining property southerly of Route 17C, placed a value on the benefit to that property by reason of the fact that it would have road frontage after the appropriation and deducted the amount so found from the *996 consequential damages that he found were sustained by claimants’ remaining property northerly of Route 17G. This was done in spite of the fact that there was no claimed common usage of the two properties, claimants made no claim for consequential damages to the remaining property southerly of Route 170, and both the appraiser for the claimants and the State placed no consequential damages on their remaining land southerly of Route 170 as a result of the appropriation. Further, the property northerly of Route 170 was zoned industrial and that southerly residential. The highest and best use of the northerly property before the appropriation was agreed upon as commercial and as to the southerly property the claimants ’ appraiser found it to be recreational and the State’s appraiser, while not specifically saying so, commercial as evidenced by a reading of his entire appraisal and his testimony on the trial.
The State failed to prove that these two separate properties were being used or could have been used together for any commercial purpose. While general benefits as well as special benefits including those peculiar to the premises in question may be deducted against any consequential damages to the remaining property, we know of no authority on which it can be said that the value of any alleged benefits to one property may be deducted from consequential damages sustained by another property that is a separate and otherwise totally unrelated property, merely because the claimants are the same, the appropriations to both properties were made on the same day and the claimants in the one claim and on the same trial sought to have determined the damages to the two different properties owned by them by reason of the appropriations. (Brand v. State of New York, 21 A D 2d 727; Flam v. State of New York, 25 A D 2d 793.)
We find that these were two separate properties and have considered them as such in making our award. As we have found no consequential damages to the 2± acres located on the southerly side of Route 170, we have given no consideration to the alleged benefits to that property in making our award.
Too often, counsel urge upon the courts novel and unusual theories without furnishing supporting authorities to aid the court on the trial. In an effort to expedite the orderly conduct of a trial and to eliminate taking an unusual amount of time in discussing and making proof on such theories, which discussion and proof may turn out to be of little or no value in the decision of a particular claim, it is suggested that all counsel research any such novel or unusual theories prior to the trial and furnish to the court and opposing counsel a trial memorandum in respect *997 to the authorities claimed to support the same. This used to be common practice for trial lawyers which would appear recently to have become largely forgotten.
Under a separate decision we have made an award in this claim.