OPINION OF THE COURT
Richard S. Lane, J.
This otherwise routine first-party fire insurance action was enlivened by defendant’s motion to dismiss for plaintiff’s failure to prove its prima facie case. Defendant moved after plaintiff rested and again at the close of all the testimony.
It was undisputed that plaintiff owned the subject premises, a mixed use commercial and residential building in Brooklyn; *719 that the premises were covered by defendant’s standard fire insurance policy in the face amount of $65,000 promising to pay "the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss”; and that there was a fire substantially gutting one of the stores that caused damage in the basement and in several apartments above the store.
Based on the income capitalization method, plaintiffs experts testified that the actual value of the premises was $66,850; that the replacement cost would be $257,125 less a suggested 35% depreciation factor; and that the cost of repairs would be $41,599.99. Defendant’s expert estimated the cost of repairs at $26,491. One wondered why the matter was not settled in the claim stage or at least prior to trial. Plaintiff was willing to cut his demand reasonably, and factoring in interest for five years, defendant could be completely triumphant on trial and still come out losing money or very close to it.
The motion solves the mystery. Defendant apparently wished to test, in the First Department, the Second Department ruling in Incardona v Home Indem. Co. (60 AD2d 749) that established the carrier’s liability as the actual cash value just before the fire less the fair market value just after the fire. The court also held that the cost of repairs clause was not a separate remedy for the insured, but merely a privilege enabling the carrier to pay less. The insured having put in no evidence of value after the fire, his claim was dismissed.
Because the insured failed to put in any evidence of value either before or after the fire and relied solely on the cost of repairs, the Incardona result (supra) was actually justified without reference to the startling new rule. The Second Department, however, implemented its new rule fully in Agostino v Holyoke Mut. Ins. Co. (89 AD2d 573, lv denied 57 NY2d 609) dismissing where there was proof of value before but not after the fire. This result followed again in Gumbs v New York Prop. Ins. Underwriting Assn. (114 AD2d 933). The Gumbs court relented only to the extent of directing a new trial when the insured was given leave to reopen and its expert testified to value after the fire in an amount obviously representing merely a subtraction of the cost of repairs.
The Incardona rule is simply wrong conceptually (see, Com *720 ment, 2 NY PJI 975). It borrowed a tort concept of damages from a personal property case where it may well have been appropriate — fire damaged furs retained and disposed of by the insured (Molot, Inc. v Commonwealth Ins. Co., 10 AD2d 683). It introduced that concept into a contract case, where it was not only inappropriate and unnecessary, but was excluded by any fair reading of the remedy that was carefully crafted by the parties and expressed with elegant simplicity. Furthermore, the concept enshrines market value as the determining factor despite explicit language to the contrary from the Court of Appeals (McAnarney v Newark Fire Ins. Co., 247 NY 176).
Not only is the Incardona rule wrong conceptually but it is an illuminating example of the trouble you get into when you try to fix something that isn’t broken. For a century or more, cases of partial fire damage covered by the standard insurance policy have been easily resolved in terms of widely accepted and understandable accounting procedures. Only when one party or another was being unreasonable with respect to figures did a case reach the trial stage. Now, maybe, there will be a wild card — fair market value immediately after the fire. Rare will be the case in which a meaningful fair market value can be fixed. Unless the fire had devastated a large area, there will be no comparable sales, and, with income interrupted, capitalization and other income and book value approaches will be virtually useless.
If the problem created by the Incardona rule can be avoided by the simple expedient adopted by the insured’s expert in the Gumbs case (supra), there will be "a lot of sound and fury signifying nothing”. Counsel for insureds will simply have to learn a new trick, and a few uninitiated will get hurt. If not, experts will have another field day testifying in amorphous unintelligible concepts, and laymen — litigants and jurors alike —will be reminded of Mr. Bumble’s famous words.
Wrong or impractical or both, am I commanded to follow the Incardona rule since neither the First Department nor any other appellate court has spoken directly to the issue? I think not. There is a long and unbroken history in the First Department as to how these cases are to be decided. Furthermore, that history is supported by the authority of the Court of Appeals.
The motion is denied and the case will be submitted to the jury.
Another perhaps less momentous issue has been raised. *721 There is a lost rentals endorsement attached to the policy that covers losses sustained by the insured resulting from "necessary untenatability” caused by the fire. Plaintiff seeks to have me charge the jury that the defendant’s failure to pay on the claim is a factor to be considered in determining the duration of "necessary untenatability”, and cites in support Saperston v American & Foreign Ins. Co. (142 Misc 730 [Sup Ct, Niagara County 1932], affd 236 App Div 880). The court declines. There has been no interference by the carrier here with repairing the premises as there was in the Saperston case. Secondly, all of the tenants returned to the premises within six or seven months despite the defendant’s failure to pay which has now lasted almost five years. And finally, such a charge would have a chilling effect on a carrier’s access to the court to resolve a genuine dispute.