Dorcinvil v State of New York (2026 NY Slip Op 50358(U))

[*1]

Dorcinvil v State of New York

2026 NY Slip Op 50358(U)

Decided on February 17, 2026

Court Of Claims

Richardson, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 17, 2026
Court of Claims

Jacques Dorcinvil, Claimant,

againstThe State of New York, Defendant.

Claim No. 130024

For Claimant:Jacques Dorcinvil, Pro SeFor Defendant:Letitia James, New York State Attorney General 
By Elizabeth Gavin, Esq., Assistant Attorney General

Edwina G. Richardson, J.

Claimant Jacques Dorcinvil, proceeding pro se, filed this negligent bailment claim against the State of New York (Defendant) on July 24, 2017, seeking $397.19 in damages. After considering the testimony and documentary evidence received at trial, the parties' arguments, and applicable law, the Court partially grants and partially dismisses the claim. The Court awards Claimant $190.71 plus applicable statutory interest.
I. BACKGROUNDThe Court conducted a trial on August 14, 2025, via Microsoft Teams, with the Court presiding in Manhattan, New York. Claimant appeared from Green Haven Correctional Facility and the Assistant Attorney General appeared from her work location.
The Court accepted the following items into evidence:[FN1]

[*2]Exhibit 1

Music by Mail Receipt 3/25/2014

Exhibit 2

Jack L. Marcus Receipt 3988171

Exhibit 3

Commissary Receipt 2/10/2017

Exhibit 4

Refund Request

Exhibit 5

Jack L. Marcus Receipt 3988171

Exhibit 6

Inmate Statement 02/01/17

Exhibit 7

Inmate Statement 03/01/17

Exhibit 8

Jack L. Marcus 1683380

Exhibit 9

Jack L. Marcus 3784832

Exhibit 10

Receipt 2/8/17

Exhibit 11

Commissary Buy Sheet

Exhibit 12

Non-Food Items 01/25/2017

Exhibit 14

Claim

Claimant testified on his own behalf that on February 14, 2017, he was taken to "the box" and that correction officers did not allow him to observe his cell being packed up. Two days later, he realized that his hot pot, colored pencils, maroon sweatpants, ClearTunes radio, Sony headphones, ten Café Bustelo coffees, muslim oils, family pictures, commissary items totaling $93.34, and several other items were missing.
The claim and attachments show that Claimant filed three separate "Inmate Claim Forms" (ICF) with the facility. The first was filed on February 17, 2017, and assigned facility claim number 080-0038-17. Claimant sought $225.63 in reimbursement for a hot pot, twelve colored pencils, a pair of sweatpants, a radio, a pair of earbuds, "All items from commissary 2/2/17," and "All items from commissary 2/10/17." The facility denied this claim in March 2017. Claimant appealed and the facility denied his appeal on March 31, 2017.
The second set of ICF papers is also dated February 17, 2017, and has the same facility claim number as the first set. The second ICF seeks reimbursement for the above-listed items, plus a pair of earbuds, Adidas sneakers, "All items from commissary 2/10/2017," two gym shorts, one typewriter, four t-shirts, a pair of gloves, shower shoes, two black nylon ribbons, and a mirror. The second set of ICF papers does not show whether the facility issued an initial or final determination or whether Claimant appealed the determination.
Claimant's third set of ICF papers bear facility claim number 080-0065-17 and are dated March 31, 2017. These papers seek $31.46 in reimbursement for pipe tobacco, rolling paper, a shipping charge, and a return shipping charge. The facility denied this claim in April 2017 and Claimant appealed. The facility denied his appeal on April 20, 2017.
At trial, Defendant did not cross examine Claimant or present evidence. Defendant moved to dismiss the claim, arguing that Claimant failed to meet his burden of proof. Claimant opposed the motion, referencing receipts and other items submitted into evidence.
II. ANALYSISAn incarcerated individual's claim for lost personal property "may not be filed unless and until the [incarcerated individual] has exhausted the personal property claims administrative remedy" established by the Department of Corrections and Community Supervision (DOCCS) (Court of Claims Act § 10[9]). DOCCS "has established a two-tier system for handling personal property claims consisting of an initial review and an appeal" (Diaz v State of New York, Ct Cl, Dec. 12, 2005, Lebous, J., claim No. 111503, UID No. 2005-019-589; see also 7 NYCRR § 1700.3). A claimant has exhausted administrative remedies if both steps have been completed before filing and serving the claim (see Tafari v State of New York, Ct Cl, Dec. 9, 2002, Lebous, J., claim No. 106576, UID No. 2002-019-591). Failure to exhaust administrative remedies deprives the Court of subject matter jurisdiction and requires dismissal (see Williams v State of New York, 38 AD3d 646, 647 [2d Dept. 2007]).
Defendant's eighth affirmative defense submits that Claimant failed to exhaust administrative remedies for the following items: Adidas sneakers, a typewriter, four t-shirts, a pair of gloves, shower shoes, black nylon ribbons, and a mirror.
These items are contained in Claimant's second ICF, which, as described above, does not indicate whether Claimant exhausted administrative remedies for the second ICF. Instead, it suggests only that Claimant submitted the papers to the facility. There is no other evidence before the Court showing that Claimant exhausted administrative remedies for these items. The Court accordingly dismisses the portion of the claim seeking reimbursement for the Adidas sneakers, a typewriter, four t-shirts, a pair of gloves, shower shoes, black nylon ribbons, and a mirror.[FN2]

The Court finds that Claimant exhausted his administrative remedies for his first ICF filed in February 2017 and his third ICF filed in March 2017. These ICFs show that the facility denied his claim, that Claimant appealed, and that the facility denied his appeal. Claimant therefore exhausted the two-tier personal property claim process contained in 7 NYCRR § 1700.3 prior to filing his claim for items in the first and third ICFs.
A. Negligent Bailment
The Court now turns to whether Claimant established his negligent bailment claim for the items contained in the first and third ICFs.
"The State as a bailee of an [incarcerated individual's] personal property owes a common law duty to secure the property in its possession" (Cunningham v New York, 75 Misc 3d 1214[A] at *2 [internal citations and quotations omitted]). To "establish a prima facie case of negligent bailment in the prison context, a claimant must demonstrate the delivery of the property to the correctional facility staff, and that the property was not returned upon claimant's demand, or not returned in the same condition" (Tchiyuka v State of New York, 83 Misc 3d 171, 177 [Ct Cl 2023]). "Once claimant meets his burden, there is a rebuttable presumption that the defendant is negligently responsible for the loss, and defendant must come forward with proof explaining the [*3]loss" (Amaker v State of New York, Ct Cl, Aug. 14, 2006, Hard, J., claim No. 105982, UID No. 2006-032-511). The defendant can rebut this prima facie case by, for example, showing the way the loss occurred is not attributable to Defendant's negligence or that it exercised the requisite level of care (Tchiyuka, 83 Misc 3d at 177).
At trial, Claimant testified and presented evidence establishing that the following items were in his possession prior to being placed in keeplock status: one radio; one hot pot; colored pencils; sweatpants; headphones; February 10, 2017, commissary items; family pictures; ten Café Bustelo coffees; and muslim oils. Claimant credibly testified that his property was not returned. Defendant did not question Claimant, present contradicting evidence or testimony, or otherwise rebut Claimant's prima facie case.
While Claimant testified that his tobacco and rolling papers went missing, he attached a credit notice from Smokers Outlet Online to his claim showing that these items were returned to the vendor. This credit notice states that the vender received the tobacco but was unable to reimburse Claimant because the bag was opened. It also states that the vendor issued Claimant a credit for the rolling papers. This credit notice therefore establishes that the tobacco and rolling papers were not lost through Defendant's negligence. 
Accordingly, Claimant has established a negligent bailment claim for: one radio; one hot pot; colored pencils; sweatpants; headphones; February 10, 2017, commissary items; family pictures; ten Café Bustelo coffees; and muslim oils.
B. Damages
Having found that Claimant established his prima facie case for negligent bailment for the above-listed items, the Court will now assess what damages, if any, to award.
The general rule for damages to personal property is to compare the difference between an item's "market value immediately before and immediately after the injury" (Gass v Agate Ice Cream, Inc., 264 NY 141, 143 [1934]). The weight of cases from the Court of Claims follows this assessment (see e.g., Tchiyuka, 83 Misc 3d at 178 [Ct Cl 2023] [the fair market value is "measured by the evidence of the original cost of the item" minus a "reasonable rate of depreciation for the property's age, use, and condition"]; Simpson v State of New York, Aug. 19, 2024, DeBow, J., claim No. 128689, UID No. 2024-038-110 [awarding fair market value]). A claimant must prove, by a preponderance of the evidence, "the value of each item of property for which he seeks damages" (Cunningham, 75 Misc 3d at *3). While receipts are generally "the best evidence of fair market value, uncontradicted testimony concerning replacement value may also be acceptable" (Vargas v State of New York, 213 NYS3d 697, *2 [Ct Cl 2024]). "The amount paid should not exceed the amount requested by" the incarcerated individual (Inmate Personal Property Claims, 7 NYCRR § 1700.8[b] [1]).
However, there are "some exceptions to the market value rule" (Lake v Dye, 232 NY 209, 214 [1921]). When an individual's personal property is lost, the Court of Appeals has deemed "[w]earing apparel in use and household goods and effects owned and kept for personal use" as "articles which cannot in any fair sense be said to be marketable, and have a market value, or at least a market value which is fairly indicative of their real value to their owner and of his loss of being deprived of them" (Lake, 232 NY at 214). When such items have been lost, "the amount of the recovery ought not to be restricted to the price which could be realized by a sale in the market" (id.). Instead, the "owner should be allowed to recover the value to him based on his actual money loss, all the circumstances and conditions considered, resulting from his being deprived of the property," excluding sentimental value (id.).
Limiting recovery to an item's fair market value "presupposes the existence of a broad market with frequent trading in articles of an identical character with the article lost" (McAnarney v Newark Fire Ins. Co., 247 NY 176, 182 [1928]). However, the "law of damages distinguishes between marketable chattels possessed for purposes of sale and chattels possessed for the comfort and well-being of their owner" (id. at 185). In other words, there is a difference between items possessed for personal use and for commercial use. This difference is acknowledged through how much an individual can recover when such property is lost. For items owned for comfort and well-being, damages should be measured "not by their value in a second-hand market, but by the value of their use to the owner who suffers from their deprivation" (id. [applying this measurement to "household furniture, family records, wearing apparel, personal effects and family portraits"]).
In the context of an incarcerated individual's negligent bailment claim, such an individual cannot enter "a broad market with frequent trading on articles of an identical character with the article lost" (id. at 183). Rather, the incarcerated individual has significant limitations on where they can purchase items and which items they can have. Often, as here, such items are household goods and apparel that support the incarcerated individual's comfort. Accordingly, such items fall within the exception to the market value rule, as explained in Lake and McAnarney. A claimant should, therefore, recover the full value to him based on the loss, "all circumstances and conditions considered" (Lake, 232 NY at 214).
Like the property owners in Lake and McAnarney, here Claimant seeks damages for household goods, apparel, and family photographs that have a unique value to him that cannot be recognized under a fair market value assessment. Considering the evidence before the Court—including Claimant's credible, uncontested testimony—and all relevant circumstances, the Court awards damages for all other items as detailed in the table below.
Regarding Claimant's family photographs, the Court of Claims has awarded compensation for photographs' intrinsic value (see e.g., Johnson v State of New York, Ct Cl, Jan. 15, 2009, Scuccimarra, J., claim No. 113605, UID No. 2009-030-002 [explaining that "[p]ersonally meaningful items, such as photographs, have no fair market value . . . although the 'intrinsic value' may be awarded if the loss is credited."]; Morillo v State of New York, Ct Cl, Oct. 29, 2008, Patti, J., claim No. 107193, UID No. 2008-013-511 ["generally only the intrinsic value may be awarded"]). While Claimant seeks reimbursement for lost family photographs, he did not include an amount sought. Because the Court cannot award an amount higher than that sought by Claimant (7 NYCRR § 1700.8[b] [1]), the Court cannot award compensation for the intrinsic value of Claimant's lost photographs.

Item

Original Cost

Award

Hot pot

$16.75

$16.75

Crayola colored pencils

$2.89

$2.89

Sweatpants

$14.95

$14.95

[*4]Radio 

$13.75

$13.75

Sony earbud MDR EXISLP 

$12.95

$12.95

Items from commissary 2/2/17

$34.92

-

Items from commissary 2/10/17

$59.42

$59.42

Family pictures

-

-

10 Café Bustelo coffees

$50

$50

20 Muslim oils

$20

$20

Tobacco

$9.98

-

Rolling papers

$3.08

-

Total

$190.71

III. ConclusionBased on the above, Claimant has proven his negligent bailment claim for the above-listed items by a preponderance of the evidence. The Court awards $190.71 in damages. This award shall carry appropriate interest from February 16, 2017 (the date of accrual) to the date of this Decision, and thereafter to the date of entry of judgment pursuant to CPLR 5001 and 5002. To the extent Claimant paid a filing fee, it may be recovered pursuant to Court of Claim Act § 11-a(2).
Any and all other evidentiary rulings and motions upon which the Court previously reserved decision or has not previously determined are hereby DENIED.
Let judgement be entered accordingly.
Dated: February 17, 2026New York, New YorkHon. Edwina G. RichardsonJudge of the Court of Claims

Footnotes

Footnote 1:Defendant objected to exhibits 1, 2, 5, 8, and 9, arguing that they were inadmissible because Claimant did not provide a certificate of authenticity. The Court admitted these exhibits into evidence over Defendant's objection.

Footnote 2:The second ICF also contains several items listed in the first ICF. The Court will consider those items only insofar as they are contained in the first ICF.