GREGORY & APPEL INSURANCE
AGENCY, Appellant–Defen-
dant/Cross–Appellee,

v.

PHILADELPHIA INDEMNITY IN-
SURANCE COMPANY, Appellee–
Plaintiff/Cross–Appellant.

No. 39A01–0410–CV–428.

Court of Appeals of Indiana.

Oct. 20, 2005.

Keith A. Kinney, Michael G. Getty, Rori L. Goldman, Hill Fulwider McDowell Funk & Matthews, Indianapolis, for Appellant.

Edward M. Kay, Paul V. Esposito, Clausen & Miller, Chicago, IL, Douglas A. Garner, Zerbe, Zerbe & Garner, Lawrenceburg, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Gregory & Appel Insurance Agency ("Gregory & Appel") appeals the trial court's exclusion of evidence, refusal of jury instructions, and award of prejudgment interest to Philadelphia Indemnity Insurance Company ("Philadelphia"). On cross-appeal, Philadelphia challenges certain jury instructions and the verdict form. We affirm in part and reverse and remand in part.[1]

### Issues

We consolidate and restate Gregory & Appel's issues as follows:

I.    Whether the trial court abused its discretion in excluding evidence regarding Gregory & Appel's affirmative defense of Philadelphia's failure to mitigate damages;

II.   Whether the trial court abused its discretion in refusing Gregory & Appel's jury instructions on mitigation of damages and actual cash value; and

III.  Whether the trial court erred in awarding prejudgment interest to Philadelphia.

We restate Philadelphia's issue as follows:

IV.  Whether the trial court abused its discretion in instructing the jury on comparative fault as to a nonparty.

### Facts and Procedural History

The relevant facts most favorable to the verdict show that Area 12 Council on Aging and Community Services ("Area 12") is a nonprofit corporation based in Dillsboro, Indiana, that provides health and home assistance services to the elderly and disabled. In 1999, Area 12 began to develop three affordable housing projects for seniors. The Aurora School project involved the conversion of a vacant school building and gymnasium owned by the City of Aurora into senior apartments and a YMCA. The estimated cost of the renovations was approximately $2,750,000. Tr. at 402. In September 1999, Area 12 employees Brad Bowen and Ken Nelson met with Area 12's insurance agent, Gregory & Appel vice president Roy Geesa, to discuss insurance coverage for the projects. Bowen later sent Geesa an appraisal of the Aurora School property.[2]

---

1.  We hereby deny Philadelphia's petition for oral argument.

2.  The appraisal values the school building at approximately $2,500,000 and the gymnasium at approximately $1,000,000. Area 12 Exh.

After meeting with Bowen and Nelson, Geesa submitted to Philadelphia an insurance application for the Aurora School, requesting $2,500,000 in property coverage and $100,000 in business interruption coverage, with a proposed effective date of June 1, 2000. In an accompanying underwriting memo, Geesa explained, "During the construction phase, the contractor has taken care of all of the insurance so this is a request for permanent insurance on the finished apartment building." Defendant's Exh. E. Geesa never visited the Aurora School site.

On December 21, 1999, Bowen told Geesa's subordinate Linda Lukasik that Area 12 needed an insurance binder on the Aurora School because it would be closing on the property. Bowen did not state, and Lukasik did not ask, whether the renovations had been completed. In fact, the renovations had not yet begun. Lukasik contacted Dawn Schaefer, a Philadelphia employee, for permission to issue the binder. Schaefer noticed the proposed effective coverage date in her records and asked Lukasik whether the renovations had been completed. Lukasik faxed Schaefer a copy of the binder with the following message: "Enclosed is your copy of the binder we faxed to the insured. It is my understanding the renovations are done on this building." Philadelphia's Ex. 235. Philadelphia approved coverage for the Aurora School effective that day.

The City of Aurora deeded the Aurora School property to Area 12 for one dollar. On January 19, 2000, a fire caused extensive damage to the unrenovated school building and gymnasium. On January 27, 2000, Philadelphia sent Area 12 a reservation of rights letter. Area 12 obtained an estimate of over $4,000,000 for restoring the Aurora School buildings to their previous condition and over $700,000 for updating their building code compliance. On March 8, 2000, Area 12's independent claims adjuster sent Philadelphia a proof of loss claim "demanding payment in full at the policy limits." Philadelphia's Ex. 216. On March 10, 2000, Philadelphia filed a declaratory judgment action in federal court seeking rescission of the binder and policy. Area 12 counterclaimed for bad faith refusal to pay and requested consequential and punitive damages. On August 28, 2000, Philadelphia settled with Area 12 for the policy limits of $2,600,000 and took a partial assignment of Area 12's claims against Gregory & Appel.

On January 19, 2001, Philadelphia and Area 12 filed suit against Gregory & Appel and Geesa.[3] Philadelphia alleged, *inter alia*, that it "became obligated to pay" Area 12 the policy limits because of Gregory & Appel's negligence in binding coverage on the buildings "without correctly ascertaining the nature of the risk to be insured" and in "erroneously advising Philadelphia about the nature of the risk to be insured." Appellant's App. at 75–76 (second amended complaint). Area 12 alleged, *inter alia*, that Gregory & Appel had "failed to obtain a sufficient amount of insurance coverage on the School[.]" *Id.* at 80. Gregory & Appel asserted as an affirmative defense that Philadelphia had failed to mitigate its damages.

A jury trial commenced on May 18, 2004. At the close of evidence, Area 12 settled with Gregory & Appel for $725,000. The trial court granted Gregory & Appel's request to add Area 12 as a nonparty for purposes of determining comparative fault.

33. At trial, Geesa testified that Bowen had given him only the portion of the appraisal related to the school building. Tr. at 1094; Defendant's Exh. F.

3. The lawsuit was originally filed in Dearborn Circuit Court and was later venued to Jefferson Circuit Court.

On May 26, 2004, the jury returned a verdict in favor of Philadelphia finding total damages of $2,600,000. The jury found Philadelphia to be 0% at fault, Area 12 to be 7% at fault, and Gregory & Appel to be 93% at fault, resulting in a net award of $2,418,000.[4] On July 6, 2004, the trial court entered judgment in that amount and awarded Philadelphia prejudgment interest at 8% from August 28, 2000.

## Discussion and Decision

### I. Exclusion of Evidence

Gregory & Appel first contends that the trial court committed reversible error by excluding evidence

> that Philadelphia should have only paid Area 12 the actual cash value of the property rather than the replacement cost, in accordance with the express, unambiguous terms of Philadelphia's insurance policy. The trial court excluded all evidence regarding actual cash value, any mention of the damages allowed under the insurance policy, or any mention of the requirement for Area 12 to rebuild the property. The trial court's [order in limine[5]] totally precluded Gregory & Appel's expert, [public adjuster] Martin Refka, from testifying that Philadelphia overpaid on the claim and should only have paid actual cash value. In addition, the trial court's ruling prevented Gregory & Appel from introducing other evidence, including an appraisal completed only about six months earlier [by certified appraiser Nelson Elliott], that would have established that Philadelphia should have paid far less on Area 12's claim and, therefore, have mitigated its damages.

Appellant's Br. at 10.

We review rulings on the admissibility of evidence for an abuse of discretion. *See*

*Fairfield Dev., Inc. v. Georgetown Woods Sr. Apts. L.P.*, 768 N.E.2d 463, 466 (Ind. Ct.App.2002), *trans. denied.*

> An abuse of discretion occurs only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. Even if a trial court errs in a ruling on the admissibility of evidence, this court will only reverse if the error is inconsistent with substantial justice.

*Id.* at 466–67 (citation and quotation marks omitted).

Area 12's policy with Philadelphia states:

3. Replacement Cost

   a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

   . . . .

   c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

   d. *We will not pay on a replacement cost basis for any loss or damage:*

      (1) *Until the lost or damaged property is actually repaired or replaced;* and

---

4. $2,600,000 × .93 = $2,418,000.

5. The trial court excluded this evidence pursuant to Philadelphia's pretrial motion to bar

and motion in limine. Gregory & Appel renewed its objection to the exclusions at trial and made corresponding offers of proof.

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

Appellant's App. at 652 (emphases added). It is undisputed that Philadelphia paid Area 12 the replacement cost value of the property up to the policy limits, rather than the actual cash value, even though Area 12 did not actually repair or replace the fire-damaged Aurora School buildings.

■ Gregory & Appel sought to present evidence of the actual cash value of the property and the policy's replacement requirement to establish that Philadelphia failed to mitigate its damages by voluntarily overpaying Area 12's claim. A plaintiff is obligated to mitigate damages when a tort has been inflicted by another party. *Carrier Agency, Inc. v. Top Quality Bldg. Prods., Inc.,* 519 N.E.2d 739, 743 (Ind.Ct. App.1988), *trans. denied.* "[T]he burden lies with the liable party to prove that the non-liable party has not used reasonable diligence to mitigate its damages." *Deible v. Poole,* 691 N.E.2d 1313, 1315 (Ind.Ct. App.1998), *aff'd,* 702 N.E.2d 1076 (Ind. 1998).

■ In excluding Gregory & Appel's evidence, the trial court sided with Philadelphia's reliance on *Nahmias Realty, Inc. v. Cohen,* 484 N.E.2d 617 (Ind.Ct.App.1985), *trans. denied* (1986). In that case, an insurer refused to pay the full cost of restoring a fire-damaged building because the owner was underinsured due to the agent's negligence. The owner sued the agent and the insurer. The owner and the insurer settled, and the agent was later found liable. The trial court awarded the owner no damages on the basis that they had been satisfied by the settlement with its insurer. The owner appealed.

The *Nahmias* court explained:

If an insurance agent undertakes to procure insurance for his principal and through his fault or neglect fails to do so, the agent is liable to the principal for any damage resulting from his failure.

The applicable measure of damages in this case is (a) the amount which would have been due under the policy which Affiliated [the agent] should have obtained for its client Nahmias, plus (b) any consequential damages resulting from Affiliated's breach of duty, less (c) the cost of unpaid premiums or cost of insurance.

*Id.* at 620–21 (citations omitted). The court further observed,

It is uncontested in this record Nahmias wanted its building restored to its former condition under the repair and replacement provisions of the policy, but it was not restored because neither American nor Affiliated would guarantee payment for the repairs. Thus, only the measure of damages above noted was appropriate in this case. Nahmias sought replacement cost insurance not reimbursement for the actual cash value of the property at the time the loss occurred. But for Affiliated's neglect, Nahmias would have so recovered. We discuss replacement cost insurance as applicable in this case below. Here we note, the damage concepts of fair market value, fair cash value, fair rental value, etc., have no applicability in this case. The evidence and the trial court's findings concerning such evidence were not material and thus were irrelevant.

*Id.* at 621 (citations to record omitted). The court also noted that Nahmias would have claimed the building's actual cash value under the policy's replacement cost endorsement:

Using that sum as seed money, it next would have reconstructed the building, then filed an additional claim with Amer-

ican [the insurer] within 180 days to recoup the difference between the amount American paid under the first claim and Nahmias's total cost to reconstruct the building and update it to current applicable codes ..., all without reference to the building's "fair cash value" before the fire.

Thus, the first element of damage properly considered by the trial court was the actual cost to restore the building to its condition just before the fire. Evidence concerning the building's actual cash value was irrelevant and immaterial, and thus non-probative.

However, Affiliated further argues under the policy, Nahmias was required to reconstruct the building completely before any liability to pay replacement and code update costs attached as to Affiliated. We disagree.

Affiliated was not a party to this contract. Just as one not a party to a contract has no standing to enforce it, as a general rule a defense based upon the terms of a contract may be asserted only by a party thereto who urges it in his own defense. Such defense may not be asserted here by Affiliated, a nonparty to the insurance contract. It was available only to American.

*Id.* at 623 (citations omitted). Ultimately, the court reversed and remanded for a new trial on damages only.

We believe that *Nahmias* is distinguishable from this case because here the *insurer* is a plaintiff—in fact, the only remaining plaintiff. Philadelphia's damages caused by Gregory & Appel's negligence were limited exclusively to the $2,600,000 that it purportedly "became obligated to pay" to Area 12 under the insurance contract.[6] Gregory & Appel was not a party to the contract, but as it points out in its brief,

Gregory & Appel did not intend to use the insurance contract as a direct defense against Philadelphia's claim.[7] Rather, it sought to prove an affirmative defense of failure to mitigate damages and intended to look to the contract to determine whether the damages were mitigated, in the same way that Philadelphia had to look to the contract to establish its own damages. The policy condition [of requiring actual repair or replacement] was available to Philadelphia, the insurer, in its dealings with Area 12, yet Philadelphia failed to exercise it. The evaluation of Philadelphia's conduct in paying the policy limits, despite the right under the insurance policy to pay only actual cash value, should have been presented to the jury. The evidence was relevant and would have assisted the jury in determining whether Philadelphia's action constituted a failure to mitigate its damages.

Appellant's Br. at 15 n. 7.[8] We agree with Gregory & Appel's reasoning, and we

---

6. Philadelphia requested only that amount (plus interest and costs) in its demand for relief.

7. Likewise, Gregory & Appel did not intend to enforce the insurance contract against Philadelphia. We are therefore unpersuaded by Philadelphia's argument that the concept of standing is applicable here. *Cf. Nahmias,* 484 N.E.2d at 623 ("Just as one not a party to a contract has no standing to enforce it, as a general rule a defense based upon the terms of a contract may be asserted only by a party

thereto who urges it in his own defense.") (citations omitted).

8. Gregory & Appel also points out that upholding the trial court's ruling in this case would obviate an insurer's duty to mitigate damages. Consequently, an agent could not argue that the insurer's damages should be limited by its contract with the insured "and not dictated by factors outside the policy (e.g., political pressure)[,]" as apparently happened in this case. Appellant's Br. at 21. Gregory & Appel further observes that "[i]f an insurer

therefore conclude that the trial court abused its discretion in excluding evidence regarding the policy's replacement requirement and the actual cash value of the Aurora School property, insofar as they relate to Philadelphia's alleged failure to mitigate damages.[9] Because Gregory & Appel was prevented from proving (and having the jury instructed regarding) its affirmative defense, we conclude that substantial justice demands reversal and remand for retrial on the issue of Philadelphia's damages.

■ We must disagree, however, with Gregory & Appel's contention that it is also entitled to a new trial on the issue of liability. Gregory & Appel relies heavily on *Medlock v. Blackwell*, 724 N.E.2d 1135 (Ind.Ct.App.2000), in which the defendant motorist contested liability and presented evidence that the plaintiffs had "failed to seek and to follow through with recommended medical treatment" after a vehicle collision. *Id.* at 1136. The jury found the plaintiffs to be 49% at fault, and their damages were reduced accordingly. On appeal from the denial of their motion for a new trial, the plaintiffs argued that "the jury was confused by the trial court's instructions as to fault and damages or mis-

understood the instruction on failure to mitigate damages[,]" whereas the defendant argued that the plaintiffs' "failure to minimize their injuries and to avoid aggravating their injuries made them at fault for their damages." *Id.* at 1137. The *Medlock* court agreed with the defendant and stated, "The General Assembly has decided that under our comparative fault system, 'fault' includes a failure to mitigate damages. While we believe the better policy would be to treat mitigation of damages as a damage issue rather than a fault allocation issue, our legislature has rejected this approach." *Id.* at 1138 (referring to Ind.Code § 34–6–2–45[10]). Gregory & Appel notes that our supreme court did not mention *Medlock* in its recent decision in *Kocher v. Getz*, 824 N.E.2d 671 (Ind. 2005), and claims that *Kocher* did not overrule *Medlock*. We disagree.

In *Kocher*, the defendant motorist stipulated to liability but claimed that the plaintiff "failed to mitigate her damages on grounds that she made insufficient efforts to find replacement part-time employment at some point after the accident." *Id.* at 673. The trial court refused defendant's comparative fault instructions that "would

---

has no duty to mitigate damages, then the possibility for collusion exists, with the agent being the victim of that collusion." *Id.* Gregory & Appel does not suggest, and the record does not indicate, that collusion occurred in this case.

9. As the insured, Area 12's damages would be measured under the *Nahmias* standard, minus the $2,600,000 it received from Philadelphia. The differing nature and extent of Area 12's and Philadelphia's damages presented significant evidentiary challenges at trial and would inevitably do so on remand were it not for Area 12's settlement with Gregory & Appel. In their respective briefs, the parties debate the evidence regarding Area 12's intent to rebuild the Aurora School buildings. Although this evidence might have been relevant as to Area 12's damages caused by Greg-

ory & Appel's failure to obtain adequate coverage, we fail to see how it would be relevant as to Philadelphia's damages under the insurance contract, which requires *actual* repair or replacement for payment of replacement cost value.

10. Indiana Code Section 34–6–2–45(b) provides:

"Fault," for purposes of IC 34–51–2 [the Comparative Fault Act], includes any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages.

have permitted a jury to consider mitigation of damages for purposes of fault allocation." *Id.* at 672. In affirming the trial court, the *Kocher* court explained:

> In cases arising under the [Comparative Fault] Act, a defense of mitigation of damages based on a plaintiff's acts or omissions occurring *after* the accident or initial injury is not properly included in the determination and allocation of "fault" under the Act. The phrase "unreasonable failure to avoid an injury or to mitigate damages" included in the definition of "fault" under Indiana Code § 34–6–2–45(b) applies only to a plaintiff's conduct *before* an accident or initial injury.

*Id.* at 674 (footnotes omitted). In light of this explanation, we are unpersuaded by Gregory & Appel's attempt to distinguish *Medlock* on the ground that liability was contested in that case. We are likewise unpersuaded by Gregory & Appel's assertion that Philadelphia's "decision to pay under the replacement cost coverage constitutes the 'accident' under the supreme court's analysis in *Kocher*." Appellant's Br. at 34. The "accident" here was Gregory & Appel's negligent binding of coverage on the unrenovated buildings, after which Philadelphia became obligated to pay Area 12 under the policy. Any issue regarding the amount of that payment goes to post-accident mitigation of damages, not fault allocation. As such, a new trial on liability is not warranted.

We now address the admissibility of Gregory & Appel's evidence that was excluded at trial and is likely to be offered again on retrial. The insurance policy's replacement cost provision should be admitted and will speak for itself. *See Forty–One Assocs. v. Bluefield Assocs.,* 809 N.E.2d 422, 427 (Ind.Ct.App.2004) ("When the terms of a contract are clear and unambiguous, those terms are conclusive, and the court will not construe the contract or look at extrinsic evidence but rather will simply apply the contract provisions."). Thus, the trial court should exclude public adjuster Martin Refka's testimony "that while Philadelphia elected to pay Area 12 replacement cost, as opposed to actual cash value, it was not required to do so." Appellant's Br. at 24 (summary of Refka's testimony). The only questions at issue are the meaning of "actual cash value," which the policy does not define, and the buildings' actual cash value.

In *Court View Centre, LLC v. Witt,* 753 N.E.2d 75 (Ind.Ct.App.2001), this Court explained:

> Actual cash value is not the equivalent of replacement cost.
>
> > The actual cash value policy is a pure indemnity contract. Its purpose is to make the insured whole but never to benefit him because a fire occurred. Replacement cost coverage, on the other hand, reimburses the insured for the full cost of repairs, if he repairs or rebuilds the building, even if that results in putting the insured in a better position than he was before the loss.

*Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349, 352 (Ind.1982). "If an old building burns to the ground, the actual value is commonly established by reference to its fair market value less the value of the land on which the building sits." *Id.* at 353. In determining the actual cash value of property, Indiana follows the broad evidence rule. Under the broad evidence rule,

> Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. It may

consider original cost and cost of reproduction; the opinion upon value given by qualified witnesses; the declarations against interest which may have been made by the insureds; the gainful uses to which the building might have been put as well as any other fact reasonably tending to throw light upon the subject.

*Id.* at 356 (quoting *McAnarney v. Newark Fire Ins. Co.*, 247 N.Y. 176, 159 N.E. 902, 905 (1928)). "[I]n applying the rule, a court may take into account market value, replacement cost, and depreciation. In addition, such factors as location and obsolescence may be considered." *Ohio Cas. Ins. Co. v. Ramsey*, 439 N.E.2d 1162, 1169 (Ind.Ct.App. 1982). The rule " 'requires the fact-finder to consider all evidence an expert would consider relevant to an evaluation, and particularly both fair market value and replacement cost less depreciation. If the appraiser finds it appropriate under the particular circumstances he may, after weighing both factors, settle on either alone.' " *Travelers Indem. Co.*, 442 N.E.2d at 357 (quoting *McAnarney*, 159 N.E. at 905).

*Id.* at 81–82.

In July 1999, certified appraiser Nelson Elliott performed an appraisal of the Aurora School at the City of Aurora's request and determined that the fair market value of the school building and the gymnasium was $281,000. Philadelphia does not challenge Elliott's qualifications or the basis for his appraisal but merely contends that his testimony is inadmissible because it "relate[s] to [Gregory & Appel's] defense that under the policy, Philadelphia should have only paid actual cash value." Appellee's Br. at 33. We have already determined that Gregory & Appel should have been allowed to prove its affirmative defense; accordingly, Elliott's testimony should be admitted on retrial.

Refka's testimony regarding valuation is more problematic, however. As we stated in *Court View Centre:*

In assessing the admissibility of expert testimony, the trial court considers three requirements.

First, the witness' testimony must be so distinctly related to some science, profession, business or occupation as to be beyond the knowledge of the average lay-person. Second, the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness' opinion or inference will aid the trier of fact in the search for the truth. And, third, *the witness must have had sufficient facts or data upon which to validly form an opinion.*

Indiana Evidence Rule 702(a) assigns to the trial court a gatekeeping function of ensuring that an expert witness' testimony both rests on a reliable foundation and is relevant to the task at hand. Knowledge admissible under the Rule must connote more than subjective belief or unsupported speculation.

753 N.E.2d at 85 (citations, quotation marks, and brackets omitted).

The trial court did not exclude Refka's testimony on the basis of reliability, but Philadelphia points out that he never visited the Aurora School site or

saw construction design plans for the original school/gymnasium. He had a "general feeling" that the building was in "medium to low condition[.]" He did his work in his head; he had no notes. He *assumed* the size of loss and the amount of debris remaining after the fire. In forming his opinion on actual cash value, Refka considered replacement costs less building depreciation. But Refka admitted that he guessed at

depreciation based on the repair estimate provided by Area 12. In reaching his depreciation figure, Refka merely *visualized* other schools that he had seen. He did not consider the depreciation of school building components, as he had done for "a lot" [of] other properties. Refka did not consult any book, treatise, or data base. His "analysis" took all of 45–60 minutes. His ballpark range of $100,000 to $500,000 provided a whopping $400,000 spread offering no reasonable certainty as to value.

Appellee's Br. at 34–35 (citations to record omitted).[11] Gregory & Appel responds that Refka based his opinion on his "significant experience" with school buildings, Elliott's appraisal, the buildings' purchase price, drawings and photographs of the buildings, the cost of debris removal, and the cost of masonry and roof repairs. Appellant's Reply Br. at 13.

At best, Refka's opinion is merely cumulative of Elliott's opinion, as Gregory & Appel concedes. *See* Appellant's Br. at 24 (acknowledging that Elliott's appraisal is "consistent with" Refka's opinion on actual cash value). At worst, Refka's opinion is an exceedingly broad, undocumented "guesstimate" that has little, if any, probative value as to the actual cash value of the buildings. Indiana Evidence Rule 403 provides that otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." At trial, the court

would have been within its discretion to exclude Refka's testimony because it was merely cumulative and lacked a sufficient factual basis. Both Gregory & Appel and the trial court should bear these considerations in mind if Refka is called to testify on retrial.

### II. Refusal of Jury Instructions

Next, Gregory & Appel asserts that the trial court improperly refused two jury instructions regarding mitigation of damages and actual cash value. We review this decision for an abuse of discretion and apply a three-part inquiry: (1) whether the tendered instructions correctly state the law; (2) whether there is evidence in the record to support the instructions; and (3) whether the substance of the instructions is covered by other instructions given. *Brooks v. Friedman,* 769 N.E.2d 696, 699 (Ind.Ct.App.2002), *trans. denied.* Because we have determined that the trial court committed reversible error in excluding evidence regarding mitigation of damages and actual cash value, we review the propriety of the instructions for purposes of retrial.

The trial court refused the following instructions tendered by Gregory & Appel:

### INSTRUCTION NO. 1

Philadelphia Indemnity Insurance Company must use reasonable care to minimize its damages. This is called mitigation of damages.

If you find defendants, Roy Geesa & Gregory & Appel are liable and that Philadelphia Indemnity Insurance Company has suffered damages, Philadelphia

---

**11.** Contrary to Gregory & Appel's assertion, Refka did not determine "that the actual cash value of the property was *either* $100,000 *or* $500,000 depending on the weight to be given to certain repairs done to the building prior to the fire." Appellant's Br. at 23 (emphases added). In fact, Refka spoke in terms of the "low" and "high end of the range[.]" Appel-

lant's App. at 426–27. The speculative nature of Refka's opinion is illustrated by the fact that the magnitude of the range ($400,000) is nearly as large as the highest value in the range ($500,000). One may fairly describe Refka's opinion of the buildings' actual cash value as $300,000, plus or minus $200,000.

Indemnity Insurance Company may not recover for any item of damage which it could have avoided through the use of reasonable care.

The defendants have the burden of proving by a preponderance of the evidence that Philadelphia Indemnity failed to use reasonable care to minimize its damages.

### INSTRUCTION NO. 2

Where a building has been destroyed by fire, the jury should consider every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. You may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; declarations against interest which may have been made by the insureds; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to establish the actual cash value of the building. You should consider every fact and circumstance which would logically tend to a formation of the correct estimate of the loss.

Appellant's App. at 319–20.

Gregory & Appel asserts that Instruction No. 1 is a correct statement of law taken "verbatim from the pattern jury instructions" and that the remaining instructions do not address mitigation of damages. Appellant's Br. at 29 (citing Ind. Pattern Jury Instruction (Civil) No. 11.120 (2003)). We agree and conclude that the trial court should give Instruction No. 1 on retrial if there is evidence in the record to support it.

As for Instruction No. 2, Gregory & Appel characterizes it as a correct statement of the Broad Evidence Rule enunciated by our supreme court in *Travelers Indemnity*, 442 N.E.2d at 356–57, "as a standard for determining actual cash val-ue." Appellant's Br. at 29. We agree. Philadelphia contends that the instruction would confuse the jury because "this case involves the determination of negligence[,]" not actual cash value. Appellee's Br. at 36. This contention misses the mark. If Gregory & Appel presents sufficient evidence to warrant an instruction on its affirmative defense of mitigation of damages, then the jury must be instructed on how to calculate the buildings' actual cash value to determine whether Philadelphia overpaid Area 12 under the insurance contract. None of the other instructions cover this issue, so the trial court should give Instruction No. 2 on retrial if there is evidence in the record to support it.

### III. Prejudgment Interest

Finally, Gregory & Appel asserts that the trial court improperly awarded Philadelphia prejudgment interest. Although we reverse Philadelphia's damage award, we address this issue because of the possibility that it will resurface on remand. As previously mentioned, the trial court ordered Gregory & Appel to pay Philadelphia prejudgment interest at the rate of 8% from August 28, 2000, when Philadelphia settled with Area 12. Gregory & Appel contends that the right to prejudgment interest is controlled by statute and that Philadelphia forfeited this right by failing to comply with the statutory requirements. We agree on both counts.

Chapter 4 of Indiana Code 34–51 is entitled "Prejudgment Interest" and was first enacted in 1988. *See* 1988 Ind. Acts 149 § 5. The purpose of the Prejudgment Interest Act "is to encourage settlement and to compensate the plaintiff for the lost time value of money." *Johnson v. Eldridge*, 799 N.E.2d 29, 33 (Ind.Ct.App. 2003), *trans. denied* (2004). Indiana Code Section 34–51–4–1 provides that the "chapter applies to any civil action arising out of

tortious conduct." Indiana Code Section 34–51–4–7 states, "The court may award prejudgment interest as part of a judgment." Indiana Code Section 34–51–4–6 provides:

This chapter does *not* apply if:

(1) within one (1) year after a claim is filed in the court, or any longer period determined by the court to be necessary upon a showing of good cause, the party who filed the claim fails to make a written offer of settlement to the party or parties against whom the claim is filed;

(2) the terms of the offer fail to provide for payment of the settlement offer within sixty (60) days after the offer is accepted; or

(3) the amount of the offer exceeds one and one-third (1 ⅓) of the amount of the judgment awarded.

(Emphasis added.) Gregory & Appel observes that Philadelphia did not make a written settlement offer within one year of filing its claim and contends that it is therefore not entitled to prejudgment interest.

Philadelphia offers two responses to Gregory & Appel's argument. First, Philadelphia refers us to *New York, Chicago & St. Louis Railway Company v. Roper*, 176 Ind. 497, 96 N.E. 468 (1911), in which our supreme court stated, "The general rule, supported by the great weight of American authority, is that, in cases of torts to property, interest on the damages may be allowed as a part of the damages, and as an approximately uniform measure of compensation." *Id.* at 505, 96 N.E. at 471. The *Roper* court further stated:

All authorities agree that in actions of this character the measure of damages is compensation, and the basis thereof is the value of the property destroyed, to be fixed as of the date of its destruction. But, however diligent the courts and parties may be, in many cases long delays inevitably result by reason of the illness and death of parties and witnesses, and for many other reasons that are universally conceded to be sound. Either party has a right to appeal to a court of review, and often the cause must be reversed by the court of appeals, in which case the judgment of the court below is vacated.... If this judgment were reversed, and the cause remanded for a new trial, and at such trial the recovery should be limited to the value of the property destroyed, the plaintiff could not be fully compensated, yet, except when the amount of recovery is so limited by statute, the law declares the rule of full compensation. Surely the law ought not to hold out to a tort feasor a premium on delay....

Nor do we believe that in cases of this character, where the value can be ascertained by fixed rules, the allowance of interest on the ascertained value of the property should be discretionary with the jury.

*Id.* at 508–09, 96 N.E. at 472–73.[12] Philadelphia states that courts have continued to follow the *Roper* rule [13] and contends

---

**12.** The North Eastern Reporter's version of this excerpt differs slightly from that of the Indiana Reports, the official reporter, on which we have relied. *See* Ind. Appellate Rule 22(A) (distinguishing "regional and official reporter[s]" for citation purposes).

**13.** Three of the four cases that Philadelphia cites for this proposition were decided before the ratification of the Prejudgment Interest

Act in 1988. *See Citizens Gas & Coke Util. v. Am. Econ. Ins. Co.*, 477 N.E.2d 329 (Ind.Ct. App.1985), *vacated on other grounds*, 486 N.E.2d 998 (Ind.1985); *Moridge Mfg. Co. v. Butler*, 451 N.E.2d 677 (Ind.Ct.App.1983); *Ft. Wayne Nat'l Bank v. Scher*, 419 N.E.2d 1308 (Ind.Ct.App.1981), *trans. denied*. The fourth case, *Korellis Roofing, Inc. v. Stolman*, 645 N.E.2d 29 (Ind.Ct.App.1995), involved the foreclosure of a mechanic's lien, not tortious

that nothing in the Prejudgment Interest Act "abrogates the common law as to prejudgment interest for readily-ascertainable tort claims for property losses." Appellee's Br. at 43.

> We disagree. This Court presumes that
>
> the legislature does not intend by the enactment of a statute to make any change in the common law beyond what it declares, either in express terms or by unmistakable implication. An abrogation of the common law will be implied (1) where a statute is enacted which undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law; or (2) where the two laws are so repugnant that both in reason may not stand.

*Irvine v. Rare Feline Breeding Ctr.,* 685 N.E.2d 120, 123 (Ind.Ct.App.1997) (citation and quotation marks omitted), *trans. denied* (1998). It is apparent to us that Indiana Code 34–51–4 covers the entire subject of the conditions for awarding prejudgment interest in tort cases and was clearly designed as a substitute for the common law. We find support for our conclusion not only in the plain language of the statutes themselves, but also in *Roper,* in which the court noted that Indiana's then-existing interest statute dealt only with contract matters and acknowledged that "if the allowance of interest in this case depends on the provisions of our statute, appellant's contention [that prejudgment interest should not have been awarded] must prevail." 176 Ind. at 505, 96 N.E. at 471. Because the suit was in tort, however, the common law rule prevailed. With the Prejudgment Interest Act, that is no longer the case today.

In the alternative, Philadelphia contends that if the Prejudgment Interest Act does control, then it should be awarded prejudgment interest because it substantially complied therewith by making "efforts to resolve this case short of trial." Appellee's Br. at 44. We cannot agree. Statutes in derogation of the common law must be strictly construed. *See Irvine,* 685 N.E.2d at 123. Because Philadelphia did not make a written settlement offer within one year after filing its claim as required by Indiana Code Section 34–51–4–6, it may not be awarded prejudgment interest on retrial.[14] *See Tincher v. Davidson,* 784 N.E.2d 551, 556 (Ind.Ct. App.2003) (affirming denial of prejudgment interest to plaintiff who had "failed to show that he met the requirements" of Ind.Code § 34–51–4–6 by writing letter to and receiving letter from defendant's insurer).

### IV. Comparative Fault

On cross-appeal, Philadelphia contends that the trial court improperly allowed the jury to reduce its recovery based on the fault of Area 12, which was added as a nonparty after settling with Gregory & Appel. *See* Ind.Code 34–51–2 (Comparative Fault Act); *see also* Ind. Code § 34–6–2–88 (defining "nonparty" for purposes of Comparative Fault Act as "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant"). "In an action based on fault, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty." Ind.Code § 34–51–2–14. The burden

---

conduct. In sum, Philadelphia's authorities are unpersuasive.

**14.** Given our resolution of this issue, we need not address Gregory & Appel's contention that the trial court selected an invalid accrual date and an excessive interest rate.

of proof for this defense lies with the defendant. Ind.Code § 34–51–2–15.

Philadelphia did not object to Area 12's addition as a nonparty but did object to several instructions on comparative fault and the verdict form, which permitted the jury to allocate fault among the three entities. The trial court overruled Philadelphia's objections. The jury found Philadelphia to be 0% at fault, Area 12 to be 7% at fault, and Gregory & Appel to be 93% at fault. Pursuant to the court's instructions and the verdict form, the jury multiplied Philadelphia's total damages of $2,600,000 by Gregory & Appel's percentage of fault, resulting in a net award of $2,418,000.

Philadelphia contends that the trial court's instructions on comparative fault were not supported by the evidence:

> Area 12 and Philadelphia presented much different claims. Area 12 contended that [Gregory & Appel] failed [to] procure a sufficient amount of insurance—from whatever company. In fact, [Gregory & Appel] secured quotes from Philadelphia's competitors. By contrast, Philadelphia claimed that [Gregory & Appel] stuck it with a risk that Philadelphia would not have insured: a school rather than a finished apartment building. Area 12's [sic] alleged failure to determine the proper amount of insurance flowed from the September 1999 meeting involving Bowen, Nelson, and Geesa. The issue of the proper amount of insurance was irrelevant to [Gregory & Appel's] negligent misrepresentation about the nature of the risk.
>
> In December 1999, Bowen asked Geesa to obtain the insurance binder. Philadelphia was not part of that discussion. Bowen did not tell Geesa that the apartment renovations had been completed. Rather, Geesa mistakenly assumed that they were complete. Later, on December 21, 1999, [Gregory & Appel] agent

Linda Lukasik asked Philadelphia to provide coverage for Area 12. There is no evidence that Area 12 was part of the discussions between [Gregory & Appel] and Philadelphia as to the binder.

> In short, Area 12 was not involved in Philadelphia's claim of negligent investigation and misrepresentation.

Appellee's Br. at 47 (citation to record omitted).

We believe that Philadelphia's argument disregards competent evidence in the record concerning Area 12's involvement. Geesa testified that after meeting with Area 12's Bowen and Nelson about the project, he understood that the contractor would be responsible for insurance during construction and that Philadelphia would underwrite only "permanent insurance on the finished apartment building." Defendant's Exh. E (Geesa's underwriting memo to Philadelphia). When Bowen told Lukasik that Area 12 needed an insurance binder on the Aurora School, he did not state, and she did not ask, whether the renovations had been completed. Following this "don't tell/don't ask" conversation, Lukasik obtained Philadelphia's permission to issue a binder on what she assumed was a finished building. Given this evidence, a jury could properly find that Area 12 *was* involved in Philadelphia's claim of negligent investigation and misrepresentation.

Philadelphia also suggests that the comparative fault instructions were not supported by the law:

> Negligence may not be imputed between parties just because they have a common connection to an occurrence. A driver's fault is not automatically imputed to his passengers. In multi-party cases, fault is not automatically imputed among tort feasors. There must be a legal relationship between parties supporting the imputation of fault. *See* I.C.

§ 34–51–2–4.[15] The law recognizes many such relationships.

[Gregory & Appel] failed to establish a relationship by which Area 12's fault could be imputed to Philadelphia. Area 12 was not Philadelphia's agent; [Gregory & Appel] was the agent of both Philadelphia and Area 12. Before the binder issued, Area 12 was just a potential customer of Philadelphia as to the Aurora project. Once the binder took effect, Area 12 and Philadelphia had a contract relationship of insured/insurer regarding that project. The law does not impute fault from one contracting party to another.

Appellee's Br. at 48 (citations omitted).

We first observe that Philadelphia's references to imputation of fault are misplaced and misleading. Under the Comparative Fault Act, the jury's task was to determine Gregory & Appel's fault in causing Philadelphia's damages and to render a verdict in proportion to that fault. *See* Ind.Code § 34–51–2–7(b)("(1) The jury shall determine the percentage of fault of the claimant, of the defendant, and of any person who is a nonparty. . . . (4) The jury next shall multiply the percentage of fault of the defendant by the amount of damages . . . and shall then enter a verdict for the claimant in the amount of the product of that multiplication."); *see also Witte v. Mundy ex rel. Mundy,* 820 N.E.2d 128, 133 (Ind.2005) ("The basic point of [Ind. Code § 34–51–2–7] is that a defendant should be required to compensate an injured party only in proportion to the defendant's fault."). Also, to the extent that Philadelphia contends (especially in its reply brief) that Area 12 should not have been included on the verdict form because it did not owe a duty to provide information to Philadelphia, we observe that it did not raise this objection at trial.[16] *See* Tr. at 1223 ("[W]e'd also object to any consideration of comparing of fault of Area 12 as now a non-party because we believe the acts of negligence that we have complained about are identified with things that Gregory & Appel in and of itself should have done, and that Area 12 was...*was not involved in those acts of negligence.*") (emphasis added). The facts indicate (and the jury found) that Area 12 was involved in those acts of negligence; whether Area 12 owed a legal duty to Philadelphia is a different question altogether. "It is well

---

**15.** Indiana Code Section 34–51–2–4 states, "For purposes of sections 6 through 10 of this chapter, a defendant may be treated along with another defendant as a single party where recovery is sought against that defendant not based upon the defendant's own alleged act or omission but upon the defendant's relationship to the other defendant." We fail to see how this statute supports Philadelphia's argument regarding nonparties.

**16.** Philadelphia asserts that "[i]n its objection to the verdict form and instructions, Philadelphia argued that Area 12 lacked a duty to provide information to Philadelphia." Appellee's Reply Br. at 10 (citing Tr. at 1223). We disagree. The only objection couched in terms of duty relates to Area 12's duty to *Gregory & Appel* as stated in Instructions 11 and 12. *See* Appellant's App. at 59 (Instruction No. 11: "An insurance agent has a duty to exercise reasonable care, skill, and good faith diligence in procuring insurance. There is a corresponding duty on the part of the insured to provide the agent with information to be used in obtaining insurance."); *id.* at 60 (Instruction No. 12: "Area 12 had a duty to provide Gregory & Appel with information to be used to obtain insurance. The failure of Area 12 to provide Gregory & Appel with information to be used in obtaining insurance can be considered by you as evidence of fault on the part of Area 12."); Tr. at 1223 (Philadelphia's objection: "Philadelphia does not believe that there is a duty imposed on an insured to provide an agent with information used in obtaining insurance. We believe that there is uh...that maybe part of normal dealings or transactions may be a practice, but it does not rise to a duty.").

settled that a party may not object on one ground at trial and rely on a different ground on appeal." *Lasater v. Lasater,* 809 N.E.2d 380, 396 (Ind.Ct.App.2004). We therefore affirm the jury's determination of liability.

In summary, we affirm the jury's verdict as to liability but reverse Philadelphia's damage award and remand for retrial on damages only. On retrial, Gregory & Appel may offer evidence to support its affirmative defense of Philadelphia's failure to mitigate damages, including evidence regarding the actual cash value of the Aurora School buildings. The trial court should give Gregory & Appel's jury instructions regarding mitigation of damages and actual cash value if there is evidence in the record to support them. Should damages be awarded to Philadelphia, the trial court may not award prejudgment interest.

Affirmed in part and reversed and remanded in part.

NAJAM, J., and BARNES, J., concur.